**ASBESTEC CONSTRUCTION SERVICES, INC., Petitioner,**

v.

**U.S. ENVIRONMENTAL PROTECTION AGENCY, Respondent.**

No. 539, Docket 87–4120.

United States Court of Appeals, Second Circuit.

Argued Jan. 11, 1988.

Decided June 15, 1988.

Peter John Sacripanti, New York City (Beveridge & Diamond, P.C., of counsel), for petitioner.

Michael M. Wenig, Environmental Defense Section, Land & Natural Resources Div., U.S. Dept. of Justice, Washington, D.C. (Roger J. Marzulla, Acting Asst. Atty. Gen., Christopher C. Herman, Office of General Counsel, U.S. E.P.A., Alexandra Callam, Asst. Regional Counsel, U.S. E.P.A. Region II, Francis S. Blake, General Counsel, Alan W. Eckert, Associate General Counsel, Charles Carter, Asst. General Counsel, U.S. E.P.A., Washington, D.C., of counsel), for respondent.

Before KAUFMAN, CARDAMONE and PRATT, Circuit Judges.

CARDAMONE, Circuit Judge:

■ Asbestec Construction Services, Inc. petitions for review of a compliance order issued by the Environmental Protection Agency (EPA) after it found that petitioner had violated § 112 of the Clean Air Act, 42 U.S.C. § 7412 (1982). Courts cannot entertain jurisdiction in an area where Congress has specified that judicial review is unavailable. Further, granting review of the instant petition would serve only to burden appellate courts as well as to shackle the agency charged by Congress with the task of speeding-up the prevention and control of air pollution. Because we lack jurisdiction to review the order, the petition is dismissed.

I

■ Petitioner is an asbestos abatement contractor. In December, 1986 it notified the EPA that it would commence removal of pipe insulation containing asbestos at a Purolator Courier Corp. facility in Rahway,

New Jersey. EPA regulations govern the procedures for such removal and provide that when friable asbestos material—that which is dry and able to be crumbled by hand—is being removed, it must be wetted adequately so that dust emissions are prevented. 40 C.F.R. §§ 61.141, 61.147(c) (1987). Wetness should be ensured until the materials are "collected for disposal," which is defined as properly bagged. *Id.* §§ 61.147(e)(1), 61.152.

The EPA investigation revealed that the asbestos at Purolator was highly friable. On March 14, 1987 Earl C. McIntosh, an agent for Purolator, asked Asbestec employees to leave the job site because he believed that the asbestos they were removing was not being adequately wetted. Three days later McIntosh notified the EPA and, as a result, on March 19, 1987 an EPA investigator toured the Purolator facility and reported that he found (1) asbestos debris on the floor, (2) dry asbestos pipe covering in unsealed bags, and (3) apparently dry asbestos in sealed bags, a conclusion drawn from the facts that the sealed bags were very light and that no water beads were visible. Shortly after the investigation was concluded, Asbestec was permitted to complete the abatement project.

Subsequently, in a June 30, 1987 memorandum, the Director of EPA's Air and Waste Management Division recommended to the Regional Administrator for Region II that compliance orders be issued against Asbestec and Purolator because the companies

(1) failed to adequately wet friable asbestos materials when they were being stripped from facility components as required by 40 CFR § 61.147(c).

(2) failed to adequately wet asbestos material that had been stripped from facility components to ensure that they remain wet until they are collected for disposal as required by 40 CFR § 61.147(e)(1).

On July 17 the EPA issued the compliance orders at issue before us, which: (1) found Purolator and Asbestec in violation of 42 U.S.C. § 7412 (national emission standards for hazardous air pollutants); (2) required the companies to identify all significant renovations or demolitions involving asbestos performed since April 5, 1984; and (3) required future compliance in all asbestos abatement projects. The orders further stated that failure to comply might result in an EPA court action for relief and that the recipients of the order could request a conference with the EPA within 10 days of its receipt. Asbestec requested and had such a conference. Asbestec alone petitions for review of the EPA compliance order.

## II

Judicial review of EPA action under the Clean Air Act is governed by 42 U.S.C. § 7607(b)(1) (1982), which provides in pertinent part that "[a] petition for review of the Administrator's action in approving or promulgating ... any order ... under section 7412(c) of this title ... or any other final action ... may be filed only in the United States Court of Appeals...." Asbestec raises two arguments in support of its contention that the compliance order issued against it is reviewable.

Petitioner first asserts that since the order was issued pursuant to § 7413(a)(3) (1982) and alleged a violation of § 7412, it is an "order ... under section 7412(c)" and hence it is reviewable. The EPA responds that the legislative history of the phrase "order ... under section 7412(c)" indicates that the phrase refers only to orders granting waivers from the prohibitions of § 7412(c) and not to compliance orders issued for violations of § 7412(c). In support of that proposition the EPA refers to legislative history of the 1977 Clean Air Act Amendments which makes it clear that judicial review applies to the "grant or denial of locally applicable orders in the appropriate circuit...." H.R.Rep. No. 338, 95th Cong., 1st Sess., *reprinted in* 1977 U.S. Code Cong. & Admin. News 3661, 3666. We agree that the "grant or denial of locally applicable orders" refers not to the issuance of compliance orders such as the one at issue here, but rather to the EPA's authority to grant or deny requests for waivers under other provisions of the Act, including § 7412(c).

Moreover, Congress' use of the term *"under* section 7412(c)" indicates that it envisioned only orders issued pursuant to authority granted in § 7412(c)—that is, "under" § 7412(c)—to be reviewable. In contrast, the order at issue here was issued pursuant to, or "under," § 7413(a)(3). Consequently, we agree with the EPA that the compliance order issued against Asbestec is not reviewable as an order "under section 7412(c)."

## III

Asbestec next contends that the § 7413(a)(3) compliance order is reviewable under § 7607(b)(1) as a "final action." The phrase "any other final action" in § 7607(b)(1) should be broadly construed. It means precisely what it says—that all *final* agency actions are reviewable. *Harrison v. PPG Indus., Inc.,* 446 U.S. 578, 587–89, 100 S.Ct. 1889, 1895–96, 64 L.Ed.2d 525 (1980). Many factors are examined to determine when an agency action is final. These include whether (1) the action is the agency's final and definitive statement, (2) preclusion of review would have a "practical and immediate" effect on the party, (3) the issues presented are purely legal or otherwise fit for judicial resolution, and (4) immediate review would foster agency and judicial efficiency. *FTC v. Standard Oil Co. of Calif.,* 449 U.S. 232, 239–43, 101 S.Ct. 488, 493–95, 66 L.Ed.2d 416 (1980).

The EPA argues that the order in the instant case is not final because an enforcement proceeding is still available. *See Lloyd A. Fry Roofing Co. v. United States EPA,* 554 F.2d 885, 891–92 (8th Cir.1977) (abatement order not final action until enforcement proceeding). It compares compliance orders with "notices of violation" issued under § 7413(a)(1) or its predecessor, which have been held not to be final actions. *See, e.g., West Penn Power Co. v. Train,* 522 F.2d 302, 310 (3d Cir.1975), *cert. denied,* 426 U.S. 947, 96 S.Ct. 3165, 49 L.Ed.2d 1183 (1976) (42 U.S.C. § 1857c–8(a)(1) transferred subsequently to § 7413(a)(1)). But, such a comparison is a poor fit since, as petitioner points out, *after* a notice of violation has been issued a compliance order may well follow, *see* 42 U.S.C. § 7413(a)(1), a progression which suggests that notice of a violation is not final. And, since the conference procedure has been exhausted, petitioner concludes, the compliance order here appears definite and final. *Cf. Fry Roofing,* 554 F.2d at 891 (no pre-enforcement review in part because conference procedure would become ineffective).

The EPA's reliance on *Fry Roofing* is not particularly helpful because that case was decided before the "any other final action" provision of § 7607 was added. In addition, *Fry Roofing* dealt with issuance of an abatement order. In such case an alleged violator could readily trigger an enforcement proceeding following receipt of an abatement order simply by refusing to "abate." In the case of a compliance order, where the alleged violator insists that he has and always will comply, an enforcement proceeding is less certain. We think therefore that petitioner's argument that the EPA's compliance order is a final and definitive statement of the agency's position is the more persuasive.

Nonetheless, the other *Standard Oil* factors tip the scales against a finding that the compliance order is a final action. With respect to the second factor—the effect on petitioner absent review—Asbestec points to diminished opportunities for it to obtain removal contracts if it is stigmatized by being found to be a violator of the Clean Air Act, compliance with which is a factor in making such awards. Yet "effect" in determining whether an agency's action is final only denotes the imposition of an obligation, the denial of a right, or some other establishment of a legal relationship. *See Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.,* 333 U.S. 103, 112–13, 68 S.Ct. 431, 436–37, 92 L.Ed. 568 (1948); *see also Abbott Laboratories v. Gardner,* 387 U.S. 136, 152–53, 87 S.Ct. 1507, 1517–18, 18 L.Ed.2d 681 (1967) (compliance necessitated great expense of money and alternative risked severe penalties); *Dow Chem. v. United States EPA,* 832 F.2d 319, 325 (5th Cir.1987) (action must fix a legal relationship). Asbestec's "stigma" contention therefore is without merit be-

cause neither its duties nor its obligations have been altered by the compliance order. *Cf. Industrial Safety Equip. Ass'n v. EPA*, 837 F.2d 1115, 1120–21 (D.C.Cir.1988) (finding no denial of right where agency action "establishes no rule that the regulated industry must obey"). Petitioner need only comply with the law.

Turning to the third factor, the issues presented are not purely legal. They are concededly mostly factual. Because of this, reviewing compliance orders would ordinarily place a significant burden on appellate courts. For example, Asbestec contends that it had no opportunity to monitor the EPA's investigation and that during the five-day period after Asbestec left the job site following McIntosh's report and the EPA investigation a third party could have tampered with that work area. Whether this assertion is true or not presents a fact question. Since an administrative order reviewable under § 7607(b) may be filed only in the courts of appeals— which are not designed and are ill-equipped to serve as fact-finding forums—this factor strongly militates against finding the instant order a final one.

In addition, considering the last factor, when there is a claimed violation of the Clean Air Act during asbestos removal, speedy action is essential. In this respect the Act addresses concerns similar to those faced by Congress when it enacted the Comprehensive Environmental Response Compensation and Liability Act, 42 U.S.C. § 9601 *et seq.* (1982) (CERCLA). Under CERCLA federal courts lack subject matter jurisdiction to review the merits of an EPA order until an enforcement action is instituted. *See Wagner Seed Co. v. Daggett*, 800 F.2d 310, 317 (2d Cir.1986). Here, the EPA must have some degree of free rein to protect the public from exposure to asbestos. To introduce the delay of court review of administrative action taken to ameliorate a potential public health hazard would conflict with Congress' aim to "accelerate ... the prevention and control of air pollution." 42 U.S.C. § 7401(b)(2). In short, immediate pre-enforcement review of compliance orders such as the one issued against Asbestec would "serve neither efficiency nor enforcement" of the Clean Air Act. *See Standard Oil*, 449 U.S. at 243, 101 S.Ct. at 495. Hence, the fourth factor militates against a finding of finality.

Having reviewed all the factors, we conclude that the EPA's compliance order is not a "final action" within the meaning of § 7607(b)(1). Absent an enforcement action being instituted by the EPA, we are without jurisdiction to review Asbestec's challenge to the order on its merits.

## IV

■ Petitioner also challenges the agency's action on constitutional grounds. It argues that the EPA's failure to afford it an administrative hearing prior to issuing the compliance order denied it due process under the Fifth Amendment to the United States Constitution. Asbestec further asserts that to deny it review of the order unconstitutionally deprives it of its right to a hearing because the order inhibits its ability to obtain asbestos removal contracts. It urges that such inhibition implicates a loss of "liberty" and "property" rights within the terms of the Fifth Amendment guarantees that no person shall be deprived of liberty or property without due process of law.

In connection with its liberty interest, Asbestec states that a significant amount of asbestos abatement projects are subject to competitive public bidding and that when submitting a bid it will have to disclose its compliance history. The taint of the compliance order, Asbestec states, will diminish its competitiveness. We cannot agree. The possible adverse effect of the order on petitioner's future business prospects is insufficient by itself to give rise to a claim that one has been deprived of a liberty interest. To mount such a challenge more than reputation alone must be at stake. The Supreme Court teaches that this sort of an allegation of defamation is actionable only when made in the context of a denial of or discharge from a government contract. *See Paul v. Davis*, 424 U.S. 693, 706, 96 S.Ct. 1155, 1163, 47 L.Ed.2d 405 (1976); *see also Board of Regents v. Roth*,

408 U.S. 564, 573–74, 92 S.Ct. 2701, 2707–08, 33 L.Ed.2d 548 (1972) (liberty interest implicated if there is a discharge and stigma or deprivation of future opportunity for government employment); *Perry v. FBI*, 781 F.2d 1294, 1302 (7th Cir.) ("[A] liberty interest is not implicated merely by a reduction in an individual's attractiveness to potential employers."), *cert. denied,* — U.S. ——, 107 S.Ct. 67, 93 L.Ed.2d 25 (1986).

Absent a showing of "loss of government employment" the alleged prejudice resulting from the issuance of this EPA order is not "sufficient" to invoke due process guarantees. *Paul,* 424 U.S. at 706, 96 S.Ct. at 1163. The rationale for the rule is plain. Due process protects—it does not create—those interests "initially recognized and protected by state [or federal] law ..." *Id.* at 710, 96 S.Ct. at 1165. Hence, a liberty interest is implicated only when a recognized interest has been altered or extinguished. *Id.* at 711, 96 S.Ct. at 1165. Asbestec has failed to make such a showing here.

With respect to Asbestec's contention that the compliance order deprived it of a "property" interest without due process of law, we observe that "[p]roperty interests ... are not created by the Constitution." *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. Instead, such interests are shaped "by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* Asbestec has not pointed to any "certain benefits" to which it would otherwise be entitled under "existing rules or understandings that stem from an independent source" of law.

It has failed to specify, for example, projects in which it has an actual contractual interest. Mere opportunity to obtain a federal contract is not a property right under the due process clause. *See ATL, Inc. v. United States,* 736 F.2d 677, 682–83 (Fed.Cir.1984). Even were such opportunity a property right, the compliance order at issue here does not prevent Asbestec from obtaining a federal contract. Under the Clean Air Act, only those convicted of criminal violations of the Act are prohibited from being awarded contracts. *See* 42 U.S.C. § 7606(a). It is true that, in addition, the EPA may in its discretion "list" companies meeting certain criteria that federal agencies may not contract with, *see* 40 C.F.R. §§ 15.1, 15.2, 15.11(a). But being a recipient of a compliance order is not among the circumstances that would result in Asbestec being placed on such a list. If at some future time appellant was subject to an administrative sanction, it would be entitled under the regulations to procedural due process protections prior to the implementation of such a penalty. *See* 40 C.F.R. § 15.12–15.14. Consequently, issuing the compliance order did not result in a deprivation either of petitioner's property or liberty interests.

## V

In sum, the compliance order at issue here is not a final order subject to court review. Absent an EPA enforcement proceeding we lack jurisdiction to review it. The failure to grant Asbestec an administrative hearing prior to its issuance did not deny petitioner due process.

Accordingly, the petition for review is dismissed.