**SOUTHERN DREDGING COMPANY, INC., Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants.**

Civ. A. No. 2:93–0203–18.

United States District Court, D. South Carolina, Charleston Division.

Sept. 22, 1993.

**556**

Ralph E. Hoisington, W. Jefferson Leath, Jr., Charleston, SC, for plaintiff.

Carl Strass, Washington, DC, for defendants.

### ORDER

NORTON, District Judge.

This matter is before the court upon cross motions for summary judgment filed by the parties. Given that no genuine issues of material fact exist which would preclude the entry of summary judgment in this matter, this court finds that plaintiff is entitled to judgment as a matter of law and thereby grants its motion for summary judgment.

### I. BACKGROUND

This matter arises from the actions of two former employees of plaintiff, Southern Dredging Company, Inc. (hereinafter "Southern"), who in February 1988 illegally dumped dredged material from Southern's dredge Cherokee in February 1988 during the performance of work on a navigable waterway of the United States.

The two former employees, William J. Floyd and Douglas M. Floyd, were convicted as individuals for violations of the Clean Water Act, 33 U.S.C. §§ 1311(a) and 1319(c), arising from the February 1988 incident. Douglas and William Floyd also have been administratively debarred from contracting with federal agencies until July 1, 1994 and July 1, 1995, respectively. At the time of their convictions, neither of the employees was employed by Southern in any capacity, and neither have owned, leased, or supervised the dredge Cherokee since the date of their convictions.

Southern was not convicted for a violation of the Clean Water Act as a result of the February 1988 incident; rather it entered a plea of guilty to a violation of the Rivers and Harbors Act, 33 U.S.C. §§ 407 and 411. Based on the Clean Water Act convictions of Southern's former employees the United States Environmental Protection Agency (hereinafter "EPA") employed its mandatory listing procedure described at 40 C.F.R. § 15.10 to place Southern's dredge Cherokee on the List of Violating Facilities (hereinafter "List"). Although Southern was not notified of this listing until December 16, 1992, the listing was effective as of August 24, 1992, and prohibited the award of any federal contract to Southern where it intended to use the dredge Cherokee in the course of performance of the contract.

The dredge Cherokee did not itself cause or otherwise give rise to the unlawful discharge of dredged material which led to the Clean Water Act convictions of the Floyds, nor does the Cherokee have any record of recurring or continuing noncompliance with clean water standards. Indeed, the EPA recently found that the Cherokee is "in 'extraordinary' condition and very well maintained," and further noted that "the condition of the Cherokee was never at issue and was not part of the reason for the criminal [Clean Water Act] violation in which it was involved...." Plaintiff's Memorandum in Support of its Motion for Summary Judgment, Dent Affidavit Exhibit I at p. 18. Therefore, the operation of the Cherokee on the navigable waterways of the United States in the performance of federal contracts would pose no inherent threat to the environment.

Plaintiff has filed this action seeking declaratory and injunctive relief to eliminate any impediment to its ability to obtain award of contracts with federal agencies where it intends to use the dredge Cherokee in the course of performance. The parties agree that there is no administrative remedy available through which plaintiff may challenge the propriety of placement of the dredge Cherokee on the List of Violating Facilities.

### II. SUMMARY JUDGMENT STANDARD

To grant a motion for summary judgment, this court must find that "there is no genuine issue as to any material fact...." Fed. R.Civ.P. 56(c). In evaluating a motion for summary judgment, this court must view the record in the light most favorable to the

nonmoving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123–24 (4th Cir. 1990). The judge is not to weigh the evidence himself but rather to determine if there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The moving party is entitled to judgment as a matter of law if the non-moving party fails to make a sufficient showing on an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If the moving party has carried its burden of establishing the absence of genuine issues of material fact, the nonmoving party "may not rest upon mere allegations or denials" of its pleading, Fed.R.Civ.P. 56(e), but must produce sufficient evidence to reasonably support a jury verdict in its favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510.

> The non-moving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.' [Cite omitted]. 'The mere existence of a scintilla of evidence in support of [the non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [the non-moving party].' [Cite omitted].

*Catawba Indian Tribe v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir.1992). *See also Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985) ("Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice. A trial, after all, is not an entitlement. It exists to resolve what reasonable minds would recognize as real factual disputes"). However, "[w]here states of mind are decisive as elements of a claim or defense, summary judgment ordinarily will not lie." *Overstreet v. Kentucky Central Life Ins. Co.*, 950 F.2d 931 (4th Cir.1991).

### III. ANALYSIS

■ It is axiomatic that a clear and unambiguous statement of Congressional intent is all that is required to support a statutory interpretation, and that the courts must reject contrary agency constructions. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 841–44, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984). The role of the judiciary in a case involving statutory interpretation ends where the meaning of the statute is clear on its face. *Id.* Therefore, a regulatory enforcement strategy which is contrary to the plain statutory language is not entitled to any deference by the court.

In placing the dredge Cherokee on the List of Violating Facilities, the EPA acted under the purported authority of the Clean Water Act, claiming that the listing was mandated by the Clean Water Act conviction of two former employees arising from their activities while aboard the dredge Cherokee. The legislation relied upon by the EPA in effecting the listing, however, does not support the government's actions.

### A.

■ Section 508(a) of the Clean Water Act provides in pertinent part as follows:

> No Federal agency may enter into any contract with any person, who has been convicted of any offense under section 1319(c) of this title, for the procurement of goods, materials, and services if such contract is to be performed at any facility at which the violation which gave rise to such conviction occurred, *and* if such facility is owned, leased, or supervised by such person.

33 U.S.C. § 1368(a) (emphasis added). By the clear language of this statute, the agencies of the federal government may not enter into a contract with any person convicted under section 309(c) of the Act, provided certain additional facts are shown to exist. Thus, where a convicted person seeks a federal contract, the agency first must determine if the convicted person intends to perform the contract at the facility at which the violation which gave rise to the conviction occurred. If that is the case, a contract award cannot be made to the convicted person if he owns, leases or supervises the facility. The Act's use of the word "and" is clearly conjunctive. Therefore, in order to be placed on the List, the convicted person must intend to perform the contract at the facility at which the violation which gave rise to the conviction occurred *and* the convicted person must own, lease or supervise the facility. That is the extent of the statutory contracting proscription.

■ If the entity with which the government seeks to contract has not been convicted of such an offense then the threshold for application of the statutory prohibition has not been met, and the government is free to contract with the entity without limitation. In such circumstances, the EPA may not take any action under the enabling regulations found at 40 C.F.R. Part 15 which would restrict the ability of such an entity to contract with federal agencies. This straightforward reading of Section 508(a) of the Clean Water Act is based on its plain language and gives full effect to the underlying congressional intent.

By contrast, the statutory interpretation which defendants advance drastically expands the scope of the limited contracting proscription by applying it to any federal contract to be performed with any facility involved in a Clean Water Act violation, regardless of whether the person seeking the contract was convicted under the Act. This reading finds no support in the plain statutory language. Indeed, the listing of a facility is merely a means to effect the statutory mandate and ensure that a convicted person does not contract with a federal agency; it is not an end unto itself.[1] Because Southern has not been convicted under the Clean Water Act, the statute does not apply to prevent the award of federal contracts to Southern where it intends to use the Cherokee in performance.

### B.

In order to effect the foregoing statutory prohibition and to prevent a convicted person from contracting with a federal agency, the EPA promulgated regulations at 40 C.F.R. Part 15 establishing a List of Violating Facilities and related listing procedures. Section 15.10 provides for a "mandatory" listing of facilities[2] under the following circumstances:

The Listing Official shall place a facility on the List of Violating Facilities if the facility which gave rise to the conviction is owned, leased, or supervised by any person who

has been convicted of a criminal offense under section 113(c) of the CAA or section 309(c) of the CWA. The mandatory listing is automatically effective upon conviction.

To ensure consistency with the literal mandate of the statute, this "automatic" listing may be effected only insofar as necessary to prevent a convicted person from performing a federal contract with the facility at which the violation which gave rise to his conviction occurred, provided the facility is owned, leased or supervised by the convicted person. *See* 33 U.S.C. § 1368(a). Such an interpretation of this regulatory provision is required by the clear statutory language.

If this regulation is interpreted to prevent persons who have not been convicted under the Clean Water Act from performing contracts with federal agencies, then it impermissibly expands the scope of the statutory prohibition. That Congress intended the prohibition against performing a federal contract with a listed facility to be limited to those persons convicted of a violation of the Clean Water Act is manifest from the face of the statute. There is no ambiguity in the statutory language which warrants a contrary agency construction, and therefore no basis for application of the mandatory listing procedures found at 40 C.F.R. § 15.10 in a manner which adversely affects persons who have not been convicted of a violation of the Clean Water Act.

Indeed, as the Second Circuit recently noted in connection with the almost identical contracting prohibition established by the Clean Air Act, "only those convicted of criminal violations of the Act are prohibited from being awarded contracts." *Asbestec Constr. Serv., Inc. v. E.P.A.*, 849 F.2d 765, 770 (2d Cir.1988). To the extent that a person who has not been convicted is subject to an administrative sanction, that person would be entitled to procedural protections, such as are provided through the agency's "discretionary" listing procedures found at 40 C.F.R. § 15.11 *et seq.*, prior to the implementation of such a penalty. *Id.*

---

1. The discretionary listing procedures found at 40 C.F.R. § 15.11 *et seq.*, however, may be applied to list a facility having a record of continuing or recurring noncompliance with clean water standards, thereby preventing its use by any person in the performance of federal contracts.

2. A facility is defined as "any building, plant, installation, structure, mine, vessel or other floating craft, location or site of operations...." 40 C.F.R. § 15.4 (1992).

The court recognizes that the Clean Water Act may give rise to a government interest in prohibiting the award of federal contracts where performance is to involve a facility which itself was the cause of an event leading to a person's conviction under the Act. Such situations, however, are properly redressable through application of the "discretionary" listing procedures. Indeed, by the terms of the regulation, these procedures specifically apply with respect to facilities with a record of continuing or recurring noncompliance with clean water standards, provided the requisite judicial or administrative enforcement action has been taken. It is only such a facility that can be said to have "given rise" to a Clean Water Act conviction as that language is used in the legislative history of the Act and in Executive Order 11738. Provided it follows the discretionary listing procedures, the EPA may list such offending facilities in furtherance of the statute and the Executive Order.

### C.

Southern does not challenge, and the court does not address, the propriety of the regulatory scheme adopted by the EPA to implement the Clean Water Act. Rather, the focus of the court's inquiry is whether application of the regulations found at 40 C.F.R. Part 15 against Southern in this matter is authorized by statute. We find that, based on the foregoing statutory interpretation, the defendants improperly applied the mandatory listing procedure, 40 C.F.R. § 15.10, to place the dredge Cherokee on the List of Violating Facilities. Indeed, because Southern was not convicted under the Clean Water Act, there is no statutory authority for using the mandatory listing procedure to prohibit the award of federal contracts to Southern based on its intended use of the Cherokee.[3]

### D.

As the preceding discussion illustrates, the court's interpretation of the Clean Water Act and the related enabling regulations results in a realistic and workable enforcement scheme consistent with both the letter and legislative intent of the statute.

Imposing a contracting restriction on parties who have not been convicted of a Clean Water Act violation through the indiscriminate listing of facilities neither furthers the intent of the Act nor serves any cognizable public policy. By applying the interpretation of the Clean Water Act this court adopts today, convicted persons will be prevented from contracting with federal agencies, facilities which have a record of recurring or continuing noncompliance with clean water standards may be listed and precluded from use in performance of federal contracts, and persons who have not been convicted under the Act and who intend to use a facility which poses no inherent threat to the environment will be free to perform federal contracts.

Moreover, this interpretation is consistent with the recent judicial pronouncement issued in connection with the parallel contracting prohibition established by the Clean Air Act and implemented by the same regulations. In *Asbestec Constr. Serv., Inc.*, 849 F.2d at 770, the court determined that "only those convicted of criminal violations of the Act are prohibited from being awarded contracts." This court finds no reason to reach a different conclusion in the case before us.

### IV. CONCLUSION

Accordingly, given that there exist no genuine issues of material fact which would preclude the granting of summary judgment, this court finds that Southern is entitled to judgment as a matter of law.

---

**3.** This court notes that use of the discretionary listing procedures established to implement the Clean Water Act also would have been inappropriate in the instant case to prevent the award of federal contracts to Southern. The dredge Cherokee was not the cause of, and therefore did not "give rise" to, the violation underlying the convictions of Southern's former employees. It is undisputed that the Cherokee has a stellar performance history without prior involvement in any environmental violation, and does not by any measure have a record of recurring or continuing noncompliance with clean water standards which might otherwise justify its discretionary listing. Indeed, the EPA has repeatedly confirmed that the condition of the dredge played no part in the Clean Water Act conviction of Southern's former employees. Therefore, no public policy is to be served by preventing the use of the Cherokee in the performance of federal contracts.

560

It is therefore,

**ORDERED,** that plaintiff's motion for summary judgment be **GRANTED.**

**ORDERED,** that defendants' motion for summary judgment be **DENIED** and the counterclaim be **DISMISSED** in its entirety. It is further

**ORDERED,** that defendants shall immediately remove the dredge Cherokee from the List of Violating Facilities, thereby permitting Southern to receive award of any contract with a federal agency where it intends to use the dredge Cherokee in the course of performance.

**AND IT IS SO ORDERED.**