**ALLSTEEL, INC., Petitioner,**

v.

**UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY and John
H. Hankinson, Jr., Respondents.**

No. 94–3179.

United States Court of Appeals,
Sixth Circuit.

Argued March 17, 1994.

Decided May 26, 1994.

Rehearing and Suggestion for Rehearing
En Banc Denied Aug. 23, 1994.

Percy L. Angelo (argued), Lyman C. Welch and Kathleen M. Hennessey, Mayer, Brown & Platt, Chicago, IL, for petitioner.

John H. Hankinson, Jr., U.S. Environmental Protection Agency, Region IV, Atlanta, GA, and James W. Rubin (argued), Dept. of Justice, Environmental and Natural Resources Div., Environmental Defense Section, Washington, DC, for respondents.

Before: NELSON and SILER, Circuit Judges; and WELLFORD, Senior Circuit Judge.

The petitioner, Allsteel, Inc., seeks pre-enforcement judicial review of an order in which the United States Environmental Protection Agency directed Allsteel "to cease any and all construction activities of any kind at [its Milan, Tennessee] facility." Although the Division of Air Pollution Control of the Tennessee Department of Environment and Conservation had issued a permit for construction of the manufacturing facility in question, the EPA maintains that the permit was not in compliance with provisions of the federal Clean Air Act, 42 U.S.C. §§ 7401 *et seq.* The Tennessee authorities take the position that the permit, as issued, meets the requirements of the law.

Allsteel moved for an emergency stay of the stop-work order. The EPA responded in opposition and moved to dismiss Allsteel's petition on jurisdictional grounds.

On March 18, 1994, we issued an order staying the stop-work order pending our decision on the jurisdictional question. Supplemental briefs were subsequently filed, at the court's request, to address one aspect of that question. We now conclude that the stop-work order was a final agency action over which we have jurisdiction, and we shall deny the EPA's motion to dismiss the petition.

In *Abbott Laboratories v. Gardner*, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967), the Supreme Court established the standard for determining whether pre-enforcement judicial review of an agency action is appropriate. Under *Abbott Labs* the initial inquiry is whether Congress manifested an intent to prohibit such review. *Id.* at 139–40, 87 S.Ct. at 1510–11. If that question is answered in the negative, the next inquiry is whether the challenged action is "final." *Id.* at 148, 87 S.Ct. at 1515. If it is, the action is reviewable.

During our consideration of the instant matter, a panel of this court addressed the reviewability of an administrative order issued under the Clean Water Act, 33 U.S.C.

§ 1251 *et. seq.*, a statute patterned on the Clean Air Act. In that proceeding, *Southern Ohio Coal v. Office of Surface Mining, Reclamation and Enforcement*, 20 F.3d 1418 (6th Cir.1994), the panel concluded from the structure of the Clean Water Act that Congress intended to prohibit pre-enforcement judicial review of compliance orders issued under that Act. The district court in which review had been sought was therefore held to have no jurisdiction to review such an order until such time as the EPA might bring an enforcement proceeding.

Like the Clean Water Act, the Clean Air Act permits the EPA to pursue a range of responses in the event that it finds a violation of new source construction rules (the alleged violation at issue in this case). Under the latter act the EPA may "(A) issue an order prohibiting the construction or modification of any major statutory source [*i.e.* a stop-work order] ...; (B) issue an administrative penalty order ...; or (C) bring a civil action [for an injunction or civil penalty]." 42 U.S.C. § 7413(a)(5). A separate provision authorizes the EPA to "take such measures, including issuance of an order ... as necessary to prevent the construction or modification of a major emitting facility which does not conform to the requirements of this part...." 42 U.S.C. § 7477. (In this case, the EPA issued its stop-work order under authority of both § 7413(a)(5)(A) and § 7477. There is no judicial review provision dealing specifically with such orders.) In addition, the government may bring a criminal action for violation of the statute, or the permit, or an order. *Id.* § 7413(c). All of these provisions are mirrored in the Clean Water Act.

The Clean Air Act differs from the Clean Water Act, however, in one highly significant respect. Section 7607(b)(1) of the Clean Air Act states that "[a] petition for review of the Administrator's action in approving or promulgating any implementation plan under [specified sections, any order or action under other specified sections, or under regulations thereunder], *or any other final action of the Administrator* ... which is locally or regionally applicable may be filed [ ] in the United States Court of Appeals for the appropriate

circuit." (Emphasis supplied.) The Clean Water Act contains no analogous provision.

*Abbott Labs* tells us that we must presume the availability of judicial review of final actions unless there is "clear and convincing evidence" of a contrary legislative intent. 387 U.S. at 141, 87 S.Ct. at 1511. The inclusion of section 7607(b) affirmatively suggests that Congress had no contrary intent with respect to final actions judicial review of which is not otherwise provided for in the statute.

Our reading of § 7607(b) is consistent with the Supreme Court's reading of the same provision in *Harrison v. PPG Industries, Inc.*, 446 U.S. 578, 100 S.Ct. 1889, 64 L.Ed.2d 525 (1980). The Court construed § 7607(b) broadly in *Harrison*, concluding that "the phrase, 'any other final action,' in the absence of legislative intent to the contrary, must be construed to mean exactly what it says, namely *any other* final action." *Id.* at 589, 100 S.Ct. at 1896 (emphasis in original). The Court also suggested that the "basic purpose" of § 7607(b)(1) is "to provide prompt pre-enforcement review of EPA action." *Id.* at 592, 100 S.Ct. at 1897.

Other courts of appeals considering the availability of pre-enforcement judicial review of Clean Air Act administrative orders have similarly concluded that the statute does not prohibit such review. See *Solar Turbines, Inc. v. Seif*, 879 F.2d 1073 (3d Cir.1989); *Asbestec Construction Services, Inc. v. U.S. Environmental Protection Agency*, 849 F.2d 765 (2d Cir.1988). We conclude that judicial review of Clean Air Act administrative orders has not been barred by Congress, and we therefore proceed to the question of whether the stop-work order at issue in this case was a "final [agency] action" under 42 U.S.C. § 7607(b)(1).

We must consider several factors in assessing the finality of an agency action, including: (1) whether the action represents the agency's final and definitive position; (2) whether the action has a "practical and immediate" effect on the plaintiff; (3) whether the dispute involves questions that are purely legal or are otherwise fit for judicial review; and (4) whether immediate review would fos-

ter agency and judicial economy. See *FTC v. Standard Oil Co.,* 449 U.S. 232, 239–42, 101 S.Ct. 488, 493–94, 66 L.Ed.2d 416 (1980). In the case at bar our review of these factors persuades us that the balance tips in favor of the conclusion that the stop-work order is a final action.

■ An order issued under 42 U.S.C. § 7413(a)(5)(A) or § 7477 is one that directs immediate action on the part of the recipient, but leaves open whether the EPA will seek enforcement. The order at issue here is the agency's final and definitive statement because, like the order in *Harrison,* it represents EPA's "last word" on the subject "[s]hort of an enforcement action." 446 U.S. at 586, 100 S.Ct. at 1894.

We have no doubt that the impact of the order was practical and immediate. The order required Allsteel to stop building a major new manufacturing facility. Compliance with the order would have prevented Allsteel from conducting its business in an efficient manner, and probably would have jeopardized Allsteel's very survival.

■ Where violation of an order would not expose the party to penalties or obligations not already imposed by the statute, the impact of the order may not be sufficiently practical or immediate to make the action "final." See *Solar Turbines, Inc.,* 879 F.2d at 1081 (no penalties flowed from violation of stop-work order under 42 U.S.C. § 7477, so order was not final action); *Asbestec Construction Services, Inc.,* 849 F.2d at 767–68 (order under 42 U.S.C. § 7413(a)(3) requiring "future compliance" with statute imposed no new obligations and was not a final action).

Here, however, Allsteel faces more than a toothless order violation of which would carry no risk of additional penalties. The order directed Allsteel to stop all construction—a new obligation, not one directly imposed by statute—and violation of the order could have resulted in harsh civil or criminal penalties. The civil penalties could have reached $25,000 per day, and the criminal penalties could have entailed imprisonment of up to five years. 42 U.S.C. § 7413(b), (c).

Had Allsteel chosen to violate the order, the company would have been subject to a penalty for willful violation regardless of the validity of the order. And if the order was valid, its violation could have meant greater penalties than Allsteel would have faced if EPA had simply brought an enforcement action without first issuing an order. The impact of the order is practical, immediate, and significant.

■ As to whether the issues raised by the petition are suitable for review, we conclude that the petition raises a core question that is purely legal in nature—the propriety of a stop-work order under § 7413(a)(5)(A) when a state agency has issued a construction permit. To the extent that the petition may raise factual questions, they could be dealt with by remand to the agency or by appointment of a special master. See *Harrison,* 446 U.S. at 594, 100 S.Ct. at 1898 ("[A]n appellate court is not without recourse in the event it finds itself unable to exercise informed judicial review because of an inadequate administrative record").

As to judicial and administrative efficiency, we note that nothing herein and nothing in the stay order issued on March 18, 1994, prevents the EPA from bringing an enforcement action against Allsteel in the district court. Such an action might well represent the most efficient way of proceeding. If the EPA does not choose to pursue an enforcement action, however, the proceeding initiated by a petition for review would appear to be the next best way of resolving the dispute—and the dispute *does* need to be resolved expeditiously.

It is therefore **ORDERED** that the EPA's motion to dismiss Allsteel's petition for review be, and it hereby is, **DENIED.** It is further **ORDERED** that the stop-work order be, and it hereby is, **STAYED** pending our decision on the merits of the petition or until further order of this court.

ENTERED BY ORDER OF THE COURT.

WELLFORD, Senior Circuit Judge, concurring.

I concur in the Order holding that under the special circumstances of this case we deem the administrative stop work order of

the EPA to be "final agency action" and that the statute does not expressly preclude judicial review. I am persuaded that to hold otherwise under the facts of this case would involve serious due process concerns. I cannot believe that Congress intended that EPA have the unreviewable authority to close down indefinitely construction of a major plant which had not yet initiated any emissions without the opportunity for a full-scale hearing to determine whether the emission system, already approved by the state environmental agency, was in violation of applicable law and regulations.

I note that over a period of months EPA has made no effort to institute an enforcement action against Allsteel in the United States District Court for the Western District of Tennessee, which unquestionably would have jurisdiction to conduct hearings to determine the very issues raised by the EPA's administrative stop order. Rather, EPA, content that it has effectually precluded manufacturing operations, has apparently sat back with its asserted position that Allsteel has no remedy in court and must seek approval, hat in hand, from its administrative staff which has disagreed with the actions of the Tennessee agency with responsibilities also to deal with air pollution and air emission control of the Allsteel facility at Milan, Tennessee.

Even if Congress were deemed to have intended, in such a situation, to preclude judicial review, I would be inclined to hold that unless EPA brought an enforcement action, in absence of agreement with a party in the posture of Allsteel, within a reasonable time, the Clean Air Act may be unenforceable as violative of constitutional due process.

I would add also that not every administrative stop order would be deemed final agency action. Only in such an unusual fact situation as this would our court deem such an order to meet the requirements discussed herein.