**ARMCO, INC., Plaintiff,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., Defendants.**

**No. 1:98–CV–2499.**

United States District Court, N.D. Ohio, Eastern Division.

March 30, 1999.

Order Denying Reconsideration Sept. 29, 2000.

Michael J. O'Callaghan, Fuller & Henry, toledo, OH, Louis E. Tosi, Douglas G. Haynam, Shumaker, Loop & Kendrick, LLP, Toledo, OH, for Plaintiff.

Arthur I. Harris, United States Attorney's Office, Cleveland, OH, Andrew J. Doyle, Department of Justice, Environment & Natural Resources Division, Washington, DC, for Defendants.

### MEMORANDUM & ORDER

O'MALLEY, District Judge.

### I.

By this action, Armco, Inc. seeks a judgment declaring that an order issued to it by the United States Environmental Protection Agency ("EPA") pursuant to Section 3013 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6934, is "invalid, unlawful, null and void." (Complaint at ¶ 2).[1] The § 3013 order that is the subject of Armco's complaint was issued on September 30, 1998 and requires Armco to propose and conduct certain hazardous waste monitoring, testing, analysis and reporting in connection with the operations of an Armco manufacturing facility located at 913 Bowman Street, Mansfield, Ohio.

The EPA seeks dismissal of Armco's action, asserting that this Court lacks jurisdiction to consider Armco's claims because: (1) RCRA precludes judicial review of § 3013 orders unless and until the EPA seeks enforcement of its order; (2) a § 3013 order is not a "final agency action" of the EPA, within the meaning of the Administrative Procedure Act ("APA"), 5 U.S.C. § 704; and (3) Armco's claim is not ripe for judicial review.[2] If the EPA is correct on any one of these contentions, then the EPA is also correct that this action must be dismissed.

### II.

After a review of all arguments presented and consideration of all relevant case law, the Court agrees with the EPA that RCRA precludes judicial review of pre-enforcement agency orders issued under § 3013 of that Act. For this conclusion, the Court relies heavily on the analysis set forth in *United States v. Mobil Oil Corp.*, No. 96–CV–1432 (JG), 1997 WL 1048911 (E.D.N.Y. Sept.11, 1997) (dismissing counterclaims asserting a pre-enforcement challenge to a § 3013 order on grounds, *inter alia*, that RCRA precludes such review). The Court also relies, by analogy, on the authority of *Southern Ohio Coal Co. v. Office of Surface Mining, Reclamation and Enforcement*, 20 F.3d 1418, 1426 (6th Cir.1994), *cert. denied*, 513 U.S. 927, 115 S.Ct. 316, 130 L.Ed.2d 278 (holding that district courts are without jurisdiction to review pre-enforcement orders issued under the Clean Water Act)[3] and *J.V. Peters*

---

1. Armco also seeks an order permanently enjoining the EPA from enforcing its § 3013 order or from seeking to impose penalties for any violations thereof.

2. Armco premises jurisdiction in this case on the APA, which waives sovereign immunity and allows judicial review of "final agency action for which there is no other adequate remedy in court." 5 U.S.C. § 704. This waiver of immunity does not apply, however,

to the extent that the governing statute precludes judicial review. 5 U.S.C. § 701(a)(1). Thus, jurisdiction can only exist in this case if (1) the challenged order is a "final agency action" *and* (2) RCRA does not preclude judicial review.

3. The Clean Water Act ("CWA") is the common shorthand for the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. § 1251 *et seq.*

& Co., Inc. v. Administrator, 767 F.2d 263, 264 (6th Cir.1985) (finding that allowance of a pre-enforcement court action would debilitate the central administrative function of CERCLA).[4]

Armco attacks the rationale of, and result reached in, Mobil Oil on a number of grounds, none of which this Court finds persuasive. Specifically, Armco argues that RCRA cannot be read to preclude pre-enforcement judicial review because: (1) the statutory language does not expressly preclude it; (2) the statutory scheme does not manifest a congressional intent to preclude it; (3) Wyckoff Co. v. EPA, 796 F.2d 1197 (9th Cir.1986) and E.I. Dupont De Nemours and Co. v. Daggett, 610 F.Supp. 260 (W.D.N.Y.1985) seem to support the existence of such review; (4) the Southern Ohio Coal case and the cases it relies upon are distinguishable because RCRA differs from the CWA; (5) the harm the agency seeks to guard against in the RCRA context is less imminent than the harm addressed by agency orders under the CWA; (6) a recent decision from the Sixth Circuit – Allsteel, Inc. v. U.S. EPA, 25 F.3d 312 (6th Cir.1994) – militates in favor of a finding that pre-enforcement review is available under RCRA; and (7) due process requires an opportunity for pre-enforcement review under the circumstances presented here.

The first five of these arguments were raised by Mobil Oil and were rejected by the district judge in that case, Judge John Gleeson. Mobil Oil, 1997 WL 1048911 at *3–*8. Judge Gleeson addressed each of these arguments, in turn, and rejected them, often relying on the analysis used by the Sixth Circuit panel in Southern Ohio Coal to do so. The Court agrees with Judge Gleeson and, to the extent applicable, the Sixth Circuit, on each of these points and need not repeat their rationale here. The Court turns to Armco's remaining two arguments in favor of pre-enforcement judicial review of these administrative orders.

### III.

Armco relies heavily on Allsteel, decided only one month after Southern Ohio Coal, in support of its argument in favor of pre-enforcement review. In Allsteel, the Sixth Circuit held that a district court did have jurisdiction to review and enjoin a pre-enforcement decision of the EPA under the Clean Air Act ("CAA"), 42 U.S.C. §§ 7401, et seq. The Allsteel Court primarily relied on two factors for its decision: (1) language in the CAA expressly authorizing judicial review of "any other final actions of the Administrator" and (2) the unique nature of the EPA order at issue – one which directed Allsteel to halt all construction on a new manufacturing facility which was already in progress and which had received all requisite approvals from the state of Tennessee. The Court expressly distinguished the Southern Ohio Coal decision because the CWA lacked the authorizing language found in the CAA, language which the Allsteel Court deemed determinative.[5] Allsteel, 25 F.3d at 314.

4. The J.V. Peters opinion pre-dated the 1986 amendment to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), which added a provision expressly precluding pre-enforcement judicial review.

5. While the Sixth Circuit Court of Appeals in Allsteel had a logical basis upon which to distinguish the part of its decision regarding the existence of pre-enforcement review from the result reached in Southern Ohio Coal, the Allsteel Court did not attempt to reconcile the two decisions on the issue of what constitutes a "final agency action" within the meaning of the Administrative Procedures Act ("APA"). Because this Court has difficulty reconciling the two circuit court decisions on the latter point, this Court does not base the dismissal of this action on the ground that a § 3013 order under RCRA is not a final agency action under the APA. The Court declines to reach that question, finding it unnecessary to do so. The Court also does not reach the EPA's "ripeness" argument, finding that it is essentially indistinguishable from its "finality" argument. The Court premises its decision solely on the conclusion that RCRA precludes review of the § 3013 order at issue in this case until the EPA seeks enforcement.

The Court also pointed out that the uniquely harsh and essentially irreversible nature of the EPA's order in that case prompted a broader scope of judicial review than it might otherwise find available. *Id.* At 318 (Wellford, J. concurring).

Armco argues that the circumstances at issue in this case are more closely analogous to those presented in *Allsteel* than to those at issue in *Southern Ohio Coal.* The Court does not agree.

■ First, Armco contends *Allsteel* counsels that, because RCRA is silent with respect to pre-enforcement review of § 3013 orders, "no contrary intent" should be inferred. That is not the thrust of *Allsteel,* however. *Allsteel* did not purport to revise the long-stated principle that congressional silence regarding the availability of judicial review is *not* determinative of the issue. *See, e.g., Thunder Basin Coal Co. v. Reich,* 510 U.S. 200, 208, 114 S.Ct. 771, 127 L.Ed.2d 29 (1994) (congressional intent to preclude judicial review can be gleaned from the structure and purposes of the Act, even where the statute is "facially silent" on the issue). *Allsteel* focused, instead, on a difference in language between the CAA and the CWA (the act considered in *Southern Ohio Coal*), which the Court deemed "highly significant": the CAA, unlike the CWA, contained an express statutory section authorizing judicial review of *any* final action of the Administrator. *Allsteel,* 25 F.3d at 314. It was only in light of that provision that the *Allsteel* Court felt silence on the issue elsewhere in the statute was insufficient to evidence a "contrary intent." Because no similar provision generally authorizing judicial review of all agency orders exists in RCRA, the *Allsteel* Court's statutory analysis is unhelpful to Armco.

■ Armco's attempt to characterize the § 3013 order imposed upon it as factually similar to the one imposed on Allsteel is similarly unhelpful. As the Court emphasized in *Allsteel,* the facts in that case were unique. The EPA ordered Allsteel to cease construction of a manufacturing facility which was already in progress and had received all applicable state approvals, including environmental approvals. The Court concluded that the order likely "would have jeopardized Allsteel's very survival." 25 F.3d at 315. As Judge Wellford emphasized in his concurrence, "[o]nly in such an unusual fact situation as this would our court deem such an order [subject to pre-enforcement review]." 25 F.3d at 316. No similar circumstances exist here. Armco may not like the fact that it is the subject of a § 3013 order, or that the order requires Armco to undertake certain testing and monitoring procedures and to negotiate with EPA regarding the nature and, ultimately, the results of those procedures. Armco cannot, however, seriously contend that EPA's order will cause it to cease its operations or that it will interfere with an ongoing, large-scale construction project. The circumstances in the two cases are simply not comparable.

For all these reasons, the Court finds that the *Allsteel* decision does not compel a contrary result in this case. *Allsteel* does nothing to undercut the holding in *Southern Ohio Coal* on the question of the propriety of pre-enforcement review and does not require this Court to disagree with Judge Gleeson's decision in *Mobil Oil.*[6]

■ Armco's final argument is its contention that due process requires an opportunity for pre-enforcement review of RCRA § 3013 orders. Armco asserts that, because a violation of the EPA order could expose it to substantial monetary

---

6. Armco also attempts to rely on *Stone Container Corp. v. U.S. EPA,* No. 96–379, 1996 WL 724375 (6th Cir. Dec. 16, 1996), an unpublished decision of yet a different Sixth Circuit panel. That reliance is unpersuasive, however. First, *Stone Container* is an unpublished decision, making Armco's citation to it

inappropriate under the Sixth Circuit's current rules. More importantly, however, the *Stone Container* merits panel expressly refused to consider the jurisdictional question posed in that case (under the CAA), finding that the EPA order should be left standing "whether or not we have jurisdiction."

penalties (which Armco characterizes as "extreme" and "substantial"), forcing Armco to await enforcement proceedings before being presented with a judicial forum to attack EPA's order would render that judicial review "illusory."

This argument carries some weight. Indeed, the Court can conceive of some pre-enforcement orders where due process concerns would be implicated. Where, for instance, the order itself is directly and irreversibly confiscatory, preventing any *meaningful* judicial review, and the agency acts in a manner which appears designed to thwart judicial review of its order, due process concerns could override an otherwise evident congressional intent to generally prohibit pre-enforcement judicial review. Indeed, these were the precise circumstances Judge Wellford found present in the *Allsteel* case when he premised his concurrence on due process grounds. 25 F.3d at 316.

Those concerns, however, are simply not present here. First, the EPA has not done anything in this case which appears designed to thwart meaningful review of its order. The EPA § 3013 order required Armco to submit a *proposal* to the EPA by October 30, 1998 regarding hazardous testing, monitoring and reporting procedures. The § 3013 order contemplated that the EPA would react to that proposal before requiring or contemplating implementation of such procedures. The EPA also gave Armco an opportunity to present any objections Armco had to the order prior to the date for submission of its proposal. While Armco did meet with the EPA and object to the order, it did not follow that meeting with documentation of its problems as EPA apparently requested. Armco simply refused to submit anything further to the EPA. Instead, Armco initiated this action on October 30, 1998, its response date under the order. Nothing in this chain of events evidences the foot-dragging or overreaching which appeared to characterize the EPA's actions in *Allsteel*. Indeed, it is obvious that, given the

state of the negotiations between the parties, it would have been premature for the EPA to seek enforcement of its order as of October 30, 1998 and would have been premature for any court to order its enforcement at that point.

It is also, clear, moreover, that due process does not demand pre-enforcement judicial review whenever the potential for the imposition of fines exists. *Laguna Gatuna, Inc. v. Browner,* 58 F.3d 564, 566 (10th Cir.1995). *See also Union Electric Co. v. EPA,* 593 F.2d 299, 305–06 (8th Cir.1979) (due process not violated where imposition of penalties is a mere possibility). This is especially true where, as here, the statute is not self-executing on the issue of fines – it authorizes a court to impose fines in response to an EPA enforcement action. If enforcement *and* penalties are sought, Armco could then assert any defenses it might have to the imposition of fines, including its objections to the validity of the underlying order; judicial review, including the opportunity for the exercise of judicial discretion on the question of fines, would then be fully available. Due process requires no more. *See Wagner Seed Co. v. Daggett,* 800 F.2d 310, 316 (2nd Cir.1986) ("[I]t is plain that there is no constitutional violation if the imposition of penalties is subject to judicial discretion").

## IV.

Accordingly, for the reasons set forth above, and those articulated in the *Mobil Oil* decision, the Court finds it is without jurisdiction to consider the claims asserted in Armco's complaint. This action is hereby **DISMISSED** without prejudice.

**IT IS SO ORDERED.**

## *ORDER*

For the reasons set forth in this Court's Memorandum and Order of this date, the Court finds it is without jurisdiction to consider the claims asserted in Armco's

complaint. Accordingly, this action is hereby **DISMISSED** without prejudice.

**IT IS SO ORDERED.**

### MEMORANDUM & ORDER DENYING RECONSIDERATION

In this action, Armco sought a judgment declaring that an order issued to it by the United States Environmental Protection Agency ("EPA"), pursuant to Section 3013 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6934, was invalid, and enjoining the EPA from enforcing the § 3013 order. On March 30, 1999, this Court issued an Order granting the EPA's motion to dismiss, based on lack of subject matter jurisdiction. *Supra* slip op. at —— ("Final Order"). Armco has filed a motion for reconsideration of this Final Order (docket no. 17). For the reasons stated below, the motion is denied.

### I.

As the Sixth Circuit Court of Appeals has recently stated, "motions to reconsider [are] nowadays correctly styled either motions for new trial or motions to alter or amend judgment," brought pursuant to Fed.R.Civ.P. 59. *Feathers v. Chevron, U.S.A., Inc.*, 141 F.3d 264, 268 (6th Cir.1998). Motions filed pursuant to Rule 59 must "be filed no later than 10 days after entry of judgment." Fed.R.Civ.P. 59(b). If a "motion to reconsider" is "not filed within the mandatory 10–day period, it is appropriate for a court to consider the motion as a motion pursuant to Rule 60 for relief from judgment." *Id.* Of course, the "standard for granting a Rule 60 motion is significantly higher than the standard applicable to a Rule 59 motion." *Id.* (citing Rules 59(a) and 60(b)). Here, including time for service, Armco did file its motion within 10 days of the date of judgment.

"Motions under Rule 59(e) must either clearly establish a manifest error of law or must present newly discovered evidence." *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir.1998) (citations omitted). *See also Hutchinson v. Staton*, 994 F.2d 1076 1081 (4th Cir.1993) ("courts interpreting Rule 59(e) have recognized three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice").

### II.

As an initial matter, the Court notes that, after Armco filed its motion for reconsideration, it wrote a letter to the Court suggesting "it would be appropriate for the Court to defer ruling on the pending motion for reconsideration," because certain pending actions by the EPA "may either moot the case or sharpen issues for disposition." Letter from Louis Tosi to the undersigned at 1 (Feb. 18, 2000). The Court did, in fact, postpone its attention to Armco's motion for several months. Since then, however, none of the parties has provided the Court with any information suggesting any meaningful change in circumstances has occurred since the time the Court issued its Final Order. Thus, the Court now weighs the merits of the motion.

After a full consideration of the parties' briefs and the entire record, the Court is easily convinced that Armco does not provide adequate grounds for altering or amending its Final Order. Armco does not identify any intervening change in controlling law, nor does it point to new evidence not available at trial. Rather, Armco argues that: (1) the Final Order contains clear legal error; and/or (2) the Final Order is premised on a "mistake of fact." Simply, the Court disagrees.

Regarding Armco's "mistake of fact" argument, Armco asserts that: (1) the Court must not have seen the letter it sent to the EPA (which it now refers to as a summary of the objections it made at its in-person meeting with the EPA); and (2) had the Court seen the letter, it would have ruled

differently. In fact, the Court *did* see and read this letter during its weighing of the EPA's motion to dismiss, and did not make any "mistake of fact" in its Final Order. The Court ruled as it did, in the Final Order, with full knowledge of the existence of Armco's "objection letter" to the EPA. The Court, simply, was of the view that the letter did not constitute "documentation" of Armco's problems with the EPA's order; it was a reiteration of Armco's objections, and no more. Even assuming that a "mistake of fact" can serve as grounds for relief under Rule 59(e), no such mistake occurred in this case.

Regarding Armco's argument that the Court made a clear legal error, the Court disagrees. The Court considered all of Armco's arguments when it rejected Armco's position, even those not considered by Courts to have ruled on the question previously. In fact, the Court recently reaffirmed its legal analysis in highly similar circumstances. *See Ross Incineration Services v. Browner,* 118 F.Supp.2d 837 (N.D.Ohio 2000). Thus, for the reasons stated in the Final Order in this case and also in *Ross,* the Court declines to alter its decision to alter or amend its prior judgment.

**IT IS SO ORDERED.**