**Mrs. Coral B. JONES et al., Appellants,**

v.

**W. P. H. McFADDIN et al., Appellees.**

**No. 7574.**

Court of Civil Appeals of Texas.

Texarkana.

Sept. 1, 1964.

Rehearing Denied Sept. 22, 1964.

W. T. Weir, Philadelphia, Miss., William Glover, Houston, W. W. Hewitt, Meadville, Miss., for appellants.

Orgain, Bell & Tucker, Geo. A. Weller, Ewell Strong, Beaumont, Thomas H. and Jesse J. Lee, Williams, Lee & Lee, William S. Clarke, Houston, Strong, Moore, Pipkin, Strong & Nelson, Beaumont, W. Forrest Smith, Dallas, Fred A. Lange, Vinson, Elkins, Weems & Searls, Houston, McLeod, Mills, Shirley & Alexander, Galveston, Sam Lipscomb, Beaumont, Butler, Binion, Rice & Cook, Houston, Dan Collie, J. L. LyBrand, Jack Hardy and Joiner Cartwright, Beaumont, for appellees.

DAVIS, Justice.

This is an action in trespass to try title to the surface estate and the mineral estate, of the Pelham Humphries league of land that is situated in Jefferson County, Texas. The suit was brought by plaintiff-appellants, Mrs. Coral B. Jones, an heir and agent and attorney in fact, and other agents and attorneys in fact, for and on behalf of approximately three thousand heirs of Pelham Humphries, against defendants-appellees, W. P. H. McFaddin, and about three hundred other defendants. In their second amended original petition, appellants alleged that they were the fee simple owners of the surface estate, and the mineral estate, of the Pelham Humphries league of land. They further alleged that the appellees had removed and marketed minerals therefrom of the value of one-half billion dollars.

The appellees answered by general denials and pleas of not guilty. They further

plead the 2, 3, 4, 5, 10 and 25 year statutes of limitation. The appellees then filed a motion for summary judgment. The appellants filed two controverting affidavits, but it seems that they do not raise any genuine issues of fact. The trial court in considering the pleadings, the records of deeds on file, the affidavits and the testimony that had been offered by depositions, granted the appellees' motion for summary judgment. It seems that the trial court held that the appellants' title, if any they had, in the event there were no deeds of conveyances, had been divested out of them by the statutes of limitation by appellees' adverse possession.

Appellants excepted to the summary judgment and have perfected their appeal. They attempt to bring forward two points of error, which read as follows:

"1. Whether the Court erred in sustaining the defendants' motion for summary judgment.

2. Whether the Court erred in overruling the plaintiffs' motion to strike defendants' plea of the statutes of limitation."

Appellants, in their brief, take the position that there are genuine issues of fact to be determined by the trial court because, they say, that there is in existence two separate and distinct estates; the surface estate; and the mineral estate. Appellees contend that there must be and is but one general title.

According to the record, W. P. H. Mc-Faddin, and those holding under him from the year 1883 down to the filing of this suit, has an unbroken, continuous, peaceful and adverse possession of all the Humphries league of land. This amounted to about 75 years adverse possession at the time of the trial of this lawsuit.

This property was once the property of Spain. King Charles III promulgated a Mining Ordinance on May 22, 1783, which applied to all Spanish Americans, except Peru. By this ordinance, appellants take the position that the Sovereign of Spain reserved all minerals; thus segregating the mineral estate from the surface estate. From 1821 to 1824, the Republic of Mexico gained its independence from Spain. Mexico then adopted, recognized and applied the Mining Ordinance of the Sovereign of Spain. According to the colonization law of Mexico, Coahuila and Texas became a Republic on March 24, 1825. On February 14, 1835, the Commissioners of Coahuila and Texas issued to Pelham Humphries a patent to eight labors of land. Thereafter, on March 2, 1836, the State of Texas became a Sovereign Nation and established itself as the Republic of Texas. The Republic of Texas adopted, recognized and applied the Mining Ordinance of 1783 issued by King Charles III, the King of Spain, as the law of the land. The Sovereign Nation of Texas became one of the States of the United States on December 29, 1847. In 1866, the State of Texas adopted the Constitutional Relinquishment Act, Art. VII, Sec. 39, whereby it released to the owners of the soil all mining and mineral substances, which reads as follows:

"That the State of Texas hereby *releases* to the *owners of the soil* all *mines* and *mineral* substances that may be on the same, subject to such uniform rate of taxation as the Legislature may impose." (emphasis added)

On December 31, 1883, W. P. H. Mc-Faddin purchased the Pelham (alias William) Humphries league of land from R. P. Carswell, the agent and attorney in fact for William and Mira English. It recited in the deed that it was the same tract of land that was conveyed on *February 14, 1836,* by *William Humphries (alias Pelham Humphries) to William English.* The deed to McFaddin was recorded on January 10, 1884. In 1884, McFaddin enclosed the entire league with a substantial cattle-proof fence. This was more than 75 years prior to the filing of this suit.

Prior to 1901, McFaddin issued an oil and gas lease. In 1901, the Lucas well blew in and the oil field was named the "Spindle-

top Oil Field". There has been continuous production of minerals ever since. There are other fact statements that could be repeated, but in view of the length of this opinion, it seems that sufficient fact statements have been given.

Appellants take the position that the mineral estate has never merged with the surface estate since it was separated by the Sovereign of Spain. They take the position that the Spanish Mining Ordinance of 1783 severed the mineral estate from the surface estate. They take the further position that the severed mineral estate reserved to the Crown of Spain and subsequently to the State of Texas was an estate in fee simple with equal dignity with the surface. They take the position that the surface estate, and the mineral estate, each being fee simple estates, could not be merged by the Constitutional Release of 1866. They say the possession of the surface, although sufficient to cure limitation to the surface, would not mature limitation title to the severed estate.

Appellees take the adverse position. They say the right of the Sovereign Crown of Spain in the minerals was not a separate and distinct fee simple estate, and was not of equal dignity with the surface. They say the reservation by Spain was a separate right, but not of equal dignity with the surface, and did not prevent a merger. They further take the position that the doctrines of merger and non-merger and its application were upon the intention of the State. The Constitutional Release of the minerals in 1866 evidenced the intent to release to the *owners of the soil* all of the title of the Sovereign to the mines and minerals for the purpose of combining the Sovereign's rights in the mineral estate with the surface estate in such manner as to give the soil owners the general title to the entire property; not to two severed estates.

In the event the intention of the State of Texas at the time of the Constitutional Release in 1866 does not govern, then we will have to look to the intention of the parties at the time of the purchase of the Humphries league of land in 1883. At that time William and Mira English were the owners of the oil (surface), as well as the mineral interest. They conveyed all the right, title and interest that they had in and to the league of land to McFaddin. The Constitutional Release of the minerals was not executed during the time that the soil was owned by Pelham Humphries, or his heirs. The deed from Humphries to English was executed on February 14, 1836. The Constitutional Release was not executed until 1866. Regardless of the intent of the parties, according to the record in the case, the Humphries have no cause of action. According to their theory, they have never been the owners of the mineral estate under the Humphries league of land.

The intention of the parties governs as to whether or not the mineral estate merged with the soil. It seems that the action of English, the owner of the soil at the time of the Constitutional Release, establishes such intent, and the minerals merged into a fee simple estate with the surface.

According to the reservations by Spain, the only mineral reservation that was made was to the gold, silver, and quicksilver and their kingdoms, as well as the income from the salt wells, fisheries, and works in iron and other metals. See Chap. 5, Spanish Mining Ordinance of 1783, Secs. 1, 2, and 3. Also see the Basic Civil Law of Spain, Partidas iii, Title 320, and iii, Law 11. If appellants are claiming under the Mining Ordinance of 1783, it must be under Section 1 of Chapter 5, which says that: "The *mines* are the property of the Royal Crown". (emphasis added). According to Las Siette Partidas, the Crown was reserving only the *income* from the *mines*. The mining Ordinance of 1783, Sec. 24, required the payment of damages to the *owners of the soil* where the *mines* were located to the extent that the surface was harmed.

The Supreme Court of Texas indicated in an opinion, State v. Parker, 61 Tex. 265,

that the Constitutional Release would apply both retrospectively and prospectively. It held that the minerals under lands previously held, as well as thereafter patented by the State, were released by the state to the present owners. In 1912, Cox v. Robison, 105 Tex. 426, 150 S.W. 1149, the Supreme Court of Texas gave the Constitutional Release a thorough analysis and outlined two alternate decisions that could be made. One alternative was intended by the framers of the Constitutional Release to release the minerals to present owners of the soil and to the future patentees and the state would be without authority in any way to control the disposition of future minerals; and, the constitutional provision would amount to the limitation on the power of legislature to reserve minerals in the future. The second alternative construction of the Constitutional Release was the one adopted by the court, which reads as follows:

"If, however, it was curative in its nature and retrospective in its effect, and intended as an extinguishment of the rights of the state only in those mines and minerals in soil owned at the time of its adoption, the title of the state to all other mines and minerals in lands of the public domain remained unimpaired and unaffected; and its authority to provide by law that their reservation should be made in future conveyances of such lands must be recognized."

We hold that as a result of the Constitutional Release of 1866 of the minerals to the owners of the soil, that the minerals and the soil became merged into a general title, and if necessary, is subject to limitation title by possession of the minerals in this case. There has actually been possession of the minerals since the year 1901, and the holders of the minerals have acquired title by limitation.

The appellees have filed a very able brief in this case. It would lead far afield to a discussion of the points of error not necessary to a decision in this case. They cite Amaya v. Sun Oil Company, Civil Action No. 664, as well as Amaya et al v. Hewit & Dougherty et al, Civil Action No. 663, and quoted freely from Judge James Allred's holdings. They cite Humphryes-Mexia Co. v. Gammon (Tex.Sup.Ct.) 113 Tex. 247, 254 S.W. 296, 29 A.L.R. 607; Cox v. Robison, supra; Carlos B. Masterson, 30 T.L.W., 331, in which they point out that under the common law doctrine that two estates of equal dignity can not be merged into one applicable to a constitutional amendment. The court held that regardless of any technical common law, the two estates were merged.

The points of error are overruled and the judgment of the trial court is affirmed.