**Roy FEATHERS, as administrator of the estate of Pelham Humphries, deceased, Plaintiff–Appellant,**

v.

**CHEVRON U.S.A., INC.; Amoco Production Company; Texaco, Inc.; and Mobil Oil Corporation, Defendants–Appellees.**

No. 96–6192.

United States Court of Appeals, Sixth Circuit.

Argued March 19, 1998.

Decided April 8, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied May 22, 1998.

Hubert D. Patty (argued and briefed), Maryville, TN, Roy Feathers, Johnson City, TN, for Roy Feathers.

Allan J. Wade (briefed), Baker, Donelson, Bearman & Caldwell, Memphis, TN, Margaret M. McKay, Houston, TX, for Chevron U.S.A. Inc.

William C. Bovender, Hunter, Smith & Davis, Kingsport, TN, Cynthia K. Timms (argued and briefed), Locke, Purnell, Rain & Harrell, Dallas, TX, for Amoco Production Co.

Howard E. Jarvis, Baker, Donelson, Bearman & Caldwell, Knoxville, TN, Reginald R. Smith (briefed), Sashe D. Dimitroff (briefed), King and Spaulding, Houston, TX, for Texaco Inc.

Robert D. Van de Vuurst (briefed), Ronald S. Range, Jr., Jennifer P. Keller (briefed), Baker, Donelson, Bearman & Caldwell, Johnson City, TN, for Mobil Oil Corp.

Before: BOGGS, NORRIS, and MOORE, Circuit Judges.

BOGGS, Circuit Judge.

In this case, a postscript to the now-fabled "Humphries heirs" lawsuits, we are called upon to resolve two questions: first, whether the district court properly dismissed plaintiff Roy Feathers's claims based on Feathers's asserted title to the land comprising the Spindletop Oil Field in Jefferson County, Texas; and second, whether the district court was within the scope of its discretion in enjoining the filing of any future "Humphries heirs" cases in the Eastern District of Tennessee without the prior permission of a judge of the district court. We answer both questions in the affirmative.

## I

The facts necessary to understand the district court's ruling dismissing Feathers's complaint have been recited so frequently, and by so many courts, that we find it sufficient merely to summarize here. In 1901, Captain Anthony Lucas and his team of wildcatters struck oil on a piece of property that came to be known as the Spindletop Oil Field. This find, on what is generally regarded as one of the richest oil deposits in the world, spawned litigation over the ownership of the oil field as early as 1902. *See Halliburton v. Martin,* 28 Tex.Civ.App. 127, 66 S.W. 675 (1902). The gist of this litigation, which has continued unabated for more than 90 years, is that the original owner of the property—Pelham Humphries, who acquired the land in 1835—never transferred the property, and therefore that the property (including royalties associated with its attendant mineral rights) belongs to Humphries's heirs at law.

According to the scores of purported "Humphries heirs" who have filed lawsuits asserting an interest in the Spindletop Oil Field, the various oil companies who currently claim title to the land comprising the oil field are beneficiaries of a fraud perpetrated in the mid-nineteenth century. As the story goes, after Pelham Humphries died intestate, someone changed the name on the original Mexican property deed from "Pelham" to "William." *See Humphries v. Texas Gulf Sulphur Co.,* 393 F.2d 69, 71 (5th Cir.1968). "William" Humphries is then said to have

conveyed the property to a man named William Inglish in a transaction backdated to 1836, though another version of the story holds that someone purporting to be Pelham Humphries (who did not die until about 1869) fraudulently sold the property to David Snively in 1857. Whichever version is correct, by 1883 the property was possessed in its entirety by a rancher named W.P.H. McFaddin, who "enclosed the entire league [of land] with a substantial cattle-proof fence" in 1884. *See Jones v. McFaddin,* 382 S.W.2d 277, 278 (Tex.Civ.App.—Texarkana 1964, writ dism'd w.o.j.), *appeal dism'd,* 382 U.S. 15, 86 S.Ct. 56, 15 L.Ed.2d 11 (1965).

The decades of Texas state-court litigation over ownership of the oil field ended in 1964, when a Texas appellate court held that the heirs and assigns of W.P.H. McFaddin had title to the oil field by adverse possession, irrespective of any purported fraudulent title alteration that may have occurred in the middle of the nineteenth century. *See Jones,* 382 S.W.2d at 280. As that court noted, "W.P.H. McFaddin, and those holding under him from the year 1883 down to the filing of this suit, has an unbroken, continuous, peaceful and adverse possession of all the Humphries league of land. This amounted to about 75 years adverse possession at the time of the trial of this lawsuit." *Id.* at 278.

Rejecting the claims asserted in a parallel line of "Humphries heirs" cases that proceeded in federal court, the Fifth Circuit agreed with the Texas state courts and held in a trio of 1968 cases that, because W.P.H. McFaddin acquired title based on adverse possession or related limitations principles, the Humphries heirs had no rights or interest in the oil field. *See Green v. Texas Gulf Sulphur Co.,* 393 F.2d 67 (5th Cir.), *cert. denied,* 393 U.S. 977, 89 S.Ct. 445, 21 L.Ed.2d 438 (1968); *Beasley v. McFaddin,* 393 F.2d 68 (5th Cir.), *cert. denied,* 393 U.S. 842, 89 S.Ct. 120, 21 L.Ed.2d 111 (1968); *Humphries v. Texas Gulf Sulphur Co.,* 393 F.2d 69 (5th Cir.1968). The Fifth Circuit concluded its trilogy of 1968 decisions with a statement that is somewhat ironic in view of the numerous "Humphries heirs" cases that have been filed since: "The Pelham Humphries litigation is over and the Humphries heirs have no title in the

league of land." *Humphries,* 393 F.2d at 75. While purported Humphries heirs have continued to file lawsuits even after the Fifth Circuit's stern admonition, they have not been successful; on the contrary, since the famous 1968 trilogy of Fifth Circuit decisions, the general view—including the view of this court—has been that "Humphries heirs" claims are barred by the doctrines of collateral estoppel and res judicata. *See In re Peregoy,* 885 F.2d 349, 352 (6th Cir.1989); *Peregoy v. Amoco Production Co.,* 742 F.Supp. 372, 375–76 (E.D.Tex.1990), *aff'd,* 929 F.2d 196 (5th Cir.), *cert. denied,* 502 U.S. 864, 112 S.Ct. 188, 116 L.Ed.2d 149 (1991).

**II**

After persuading a Tennessee state probate court to name him administrator of the estate of Pelham Humphries, Roy Feathers filed this lawsuit in the United States District Court for the Eastern District of Tennessee in October 1995. Like the previous "Humphries heirs" plaintiffs, Feathers requested relief under a variety of legal theories on the asserted ground that, when Pelham Humphries died intestate, he still owned the land at issue; and that the defendant oil companies' interest in the land was invalid because it was derived from the interest of W.P.H. McFaddin, who in turn acquired the land through the purported fraudulent transfers described above. Pursuant to Fed.R.Civ.P. 12(b)(6), the defendants each moved to dismiss Feathers's complaint on grounds of res judicata and collateral estoppel. On April 17, 1996, the district court granted the motions and dismissed the case.

Feathers did not file a notice of appeal from the district court's order within 30 days as required by Fed. R.App. P. 4(a)(1), nor did he file a Fed.R.Civ.P. 59 motion for reconsideration within the ten days allowed by that rule. However, on May 17, 1996, Feathers did file a paper in the district court originally entitled "Motion for New Trial"; Feathers struck out the original caption and inserted a new handwritten caption reading "Motion to Reconsider." To this motion, Feathers attached an affidavit from a British genealogist, who discussed in some detail the alleged nineteenth-century instances of fraud described above. Feathers also quoted from a purported letter written by the Texas Land Commissioner, discussing apparent irregularities in the deed records relating to the land comprising the Spindletop Oil Field.[1] In an order dated August 1, 1996, the district court denied the motion as untimely, but also noted that "Feathers did not provide the Court with any truly new information distinguishing this claim from his earlier claim or the myriad of claims made by other putative Humphries heirs." The district court further ordered "that the Clerk of the Court for the Eastern District of Tennessee is enjoined from accepting for filing any lawsuit by any party claiming as an heir of Pelham Humphries and involving any claim to the land known as the Humphries Survey, the Humphries League, or the Spindletop Oil Field, unless there is first a motion for leave to file granted by a sitting judge in the Eastern District of Tennessee."

Feathers filed a notice of appeal on August 30, 1996, specifically designating the April 17 order of dismissal as the subject of appeal. With the notice of appeal, Feathers filed a new affidavit from the British genealogist whose initial affidavit was submitted with Feathers's Rule 59 motion. The defendants moved to dismiss the appeal as untimely, arguing that the late-filed Rule 59 motion did not toll the 30–day period for filing a notice of appeal from the April 17 order of dismissal. A panel of this court granted the defendants' motions in part, holding that Feathers was entitled to appeal the district court's denial of his "motion to reconsider," but was not entitled to appeal the underlying dismissal. *See Feathers v. Chevron U.S.A., Inc.,* 141 F.3d 264 (6th Cir.1997).

---

1. While this letter is part of the record because it was filed in the district court, it is unclear whether this purported letter satisfies the evidentiary requirements imposed by Fed.R.Civ.P. 56 for documents submitted in connection with the proposed summary disposition of a case. The "certified true copy" of the letter contained in the joint appendix is unsigned, is not on any letterhead, is not addressed to Feathers, and appears to have been printed in a font identical to that used in Feathers's notice of appeal.

## III

Feathers's appeal questions the propriety both of the district court's denial of Feathers's Rule 59 motion and of the district court's injunction limiting the ability of future litigants to file "Humphries heirs" claims without prior court permission. We consider each issue in turn.

### A

■ The district court's August 1, 1996, order raises two questions: first, whether Feathers's "motion to reconsider" was properly dismissed as a Rule 59 motion on timeliness grounds; and second, whether, if construed as a Fed.R.Civ.P. 60 motion, Feathers was entitled to relief from judgment. The answer to the first question clearly is yes; Rule 59 provides that motions to reconsider—nowadays correctly styled either motions for new trial or motions to alter or amend judgment—"shall be filed no later than 10 days after entry of judgment," Fed.R.Civ.P. 59(b), (e), and most courts have concluded that the 10-day filing requirement is jurisdictional. *See, e.g., Rodick v. City of Schenectady,* 1 F.3d 1341, 1346 (2d Cir.1993); *Cavaliere v. Allstate Ins. Co.,* 996 F.2d 1111, 1113 (11th Cir.1993). In other contexts, our own precedent dictates that a Rule 59 motion filed outside the mandatory 10-day window is of no effect. *See Myers v. Ace Hardware, Inc.,* 777 F.2d 1099, 1103 (6th Cir.1985). We therefore conclude that the district court correctly ruled that Feathers's motion could not proceed under Rule 59.

■ Where a party's Rule 59 motion is not filed within the mandatory 10-day period, it is appropriate for a court to consider the motion as a motion pursuant to Rule 60 for relief from judgment. *See, e.g., Van Skiver v. United States,* 952 F.2d 1241, 1243 (10th Cir.1991), *cert. denied,* 506 U.S. 828, 113

S.Ct. 89, 121 L.Ed.2d 51 (1992). The standard for granting a Rule 60 motion is significantly higher than the standard applicable to a Rule 59 motion, however. A timely Rule 59 motion may be granted "for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States." Fed.R.Civ.P. 59(a). A Rule 60(b) motion, by contrast, may be granted only for certain specified reasons:

(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed.R.Civ.P. 60(b). In reviewing an order denying Rule 60(b) relief, we have no occasion to review the underlying judgment—here, the dismissal of Feathers's complaint. Instead, we merely inquire as to whether one of the specified circumstances exists in which Feathers is entitled to reopen the merits of his underlying claims. *See Peake v. First Nat'l Bank & Trust Co.,* 717 F.2d 1016, 1020 (6th Cir.1983).

■ Insofar as Feathers's motion can be construed as a motion for relief from judgment, we consider it significant that Feathers is only entitled to challenge the judgment entered against him on April 17, 1996, and not any of the myriad prior judgments denying the claims of other Humphries heirs.[2]

---

2. While the most recent reported "Humphries heirs" case was a putative class action, it—like previous putative class actions on the same subject—was disposed of on summary judgment before any class could be certified. *See Peregoy,* 742 F.Supp. at 373. Feathers thus was not a party to the case and was not directly bound by the adverse judgment entered in that action. It is a matter of considerable debate in this circuit whether and to what extent the doctrines of res

judicata and collateral estoppel apply against a nonparty who subsequently brings a suit raising the same claims or issues against defendants named in the prior suit. *See Becherer v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 131 F.3d 580 (6th Cir.1997), *vacated pending reh'g en banc,* 131 F.3d 593 (6th Cir.1998). We express no opinion as to whether the prior "Humphries heirs" decisions had a preclusive effect on Feathers's claims, but note only that Feathers's motion

Where the ground for a litigant's motion for relief from judgment is newly discovered evidence or fraud (as it appears to be here), the motion must be brought within one year of the challenged judgment. *See* Fed.R.Civ.P. 60(b). Because Feathers's motion was filed more than five years after *Peregoy* and even longer after entry of judgment in the previous "Humphries heirs" cases, his only possible claim can be for relief from the April 17, 1996, order dismissing his complaint.

■ The only remaining question, then, is whether Feathers's motion was sufficiently supported by a showing either of newly discovered and previously unavailable evidence, or of previously undiscovered fraud, to warrant relief from the April 17 order. Our reading of previous "Humphries heirs" cases indicates that, far from showing new evidence developed after April 17, 1996, or previously undiscovered fraud that came to light after that date, Feathers's motion merely restates the evidence considered and rejected in prior cases. For example, the central assertions made in the genealogist's affidavits submitted by Feathers—that Pelham Humphries, and not William Humphries, was the original grantee of the Humphries League; that William Humphries's conveyance to William Inglish was invalid; and that tax records demonstrate that early purported conveyances of the land did not actually occur—were all considered and specifically rejected at least as early as 1968. *See Humphries,* 393 F.2d at 71. Moreover, the specific allegation in support of which Feathers cites the purported Texas Land Commissioner letter also was considered and rejected by the Fifth Circuit in 1968: "The basis for this contention is that in the original grant the colonist named throughout is Pelham, except that in the first line the name 'William' has been interlined over the name 'Pelham.' That interlineation has generated all the controversy surrounding this land." *Ibid.*

In sum, the record contains no new evidence that would warrant relief under Rule 60(b). State and federal courts across the country have considered evidence suggesting that Pelham Humphries's heirs have a property interest in the land comprising the

could not seek relief from any such effect of

Spindletop Oil Field, and they have uniformly held that the Humphries heirs have no such interest. They lost any such interest, if it ever existed, by adverse possession many years ago. We therefore affirm the district court's denial of Feathers's motion for reconsideration.

**B**

■ In an effort to stanch the ongoing flow of meritless and repetitive "Humphries heirs" cases, the district court issued an injunction under which no future "Humphries heirs" cases may be filed without leave of court. There is nothing unusual about imposing prefiling restrictions in matters with a history of repetitive or vexatious litigation. *See, e.g., Filipas v. Lemons,* 835 F.2d 1145, 1146 (6th Cir.1987). Moreover, we see nothing wrong, in circumstances such as these, with an order that restrains not only an individual litigant from repeatedly filing an identical complaint, but that places limits on a reasonably defined category of litigation because of a recognized pattern of repetitive, frivolous, or vexatious cases within that category. As the Ninth Circuit has recognized, "[t]he general pattern of litigation in a particular case may be vexatious enough to warrant an injunction in anticipation of future attempts to relitigate old claims." *Wood v. Santa Barbara Chamber of Commerce, Inc.,* 705 F.2d 1515, 1524 (9th Cir.1983) (citing *Pavilonis v. King,* 626 F.2d 1075 (1st Cir. 1980), and *Ruderer v. United States,* 462 F.2d 897 (8th Cir.1972)), *cert. denied,* 465 U.S. 1081, 104 S.Ct. 1446, 79 L.Ed.2d 765 (1984).

In his brief, Feathers inaccurately characterizes the district court's order as "enjoining future lawsuits concerning this matter." In fact, the district court merely imposed a conventional prefiling review requirement, and one that seems quite judicious given the seemingly unending supply of "Humphries heirs" plaintiffs abroad in the land. Feathers provides no reason why, given the history of the "Humphries heirs" litigation, it would be an abuse of discretion for a district court to implement a screening mechanism to filter

those decisions.

out future complaints raising claims identical to those that have been rejected on so many previous occasions. Accordingly, we will not disturb the district court's injunction.

## IV

For the foregoing reasons, the judgment of the district court is AFFIRMED.