**In re QUALITY STORES, INC., et al., Debtors.**

No. GG 01–10662.

United States Bankruptcy Court, W.D. Michigan.

Jan. 11, 2002.

---

Robert F. Wardrop, II, Esq., Grand Rapids, MI, for Retail Team, LLC.

Timothy Curtin, Esq. and Stephanie Simon, Esq., for Quality Stores, Inc., et al.

Steven Grow, Esq., for Orscheln Supply, LLC.

Brian Witus, Esq., Bloomfield Hills, MI, for Creditors' Committee.

Scott Dales, Esq., Grand Rapids, MI, for Prepetition Lenders.

Dean Rietberg, Esq., Grand Rapids, MI, for the Office of the United States Trustee.

### OPINION REGARDING MOTION FOR RECONSIDERATION OF SALE ORDER

JAMES D. GREGG, Chief Judge.

### I.

#### ISSUE

Should this court reconsider its order of January 4, 2002, which authorizes the debtors to sell twenty-six stores to Orscheln Supply, LLC, based upon new evidence presented by Retail Team, LLC, that it has the financial wherewithal to purchase the same stores for a higher price?

### II.

#### JURISDICTION

The court has jurisdiction over this bankruptcy case. 28 U.S.C. § 1334. The case and all related proceedings have been referred to this court for decision. 28 U.S.C. § 157(a) and L.R. 83.2(a) (W.D.Mich.). This contested matter is a core proceeding because it concerns the administration of debtors' estate, 28 U.S.C. § 157(b)(2)(A), and involves an order approving the sale of property, 28 U.S.C. § 157(b)(2)(N).

### III.

#### FACTUAL AND PROCEDURAL BACKGROUND

A. *The Chapter 11 Case and the Omnibus Motion.*

On October 20, 2001, an involuntary petition was filed against Quality Stores, Inc., under chapter 11 of the Bankruptcy Code.[1] On November 1, 2001, Quality Stores, Inc., answered the involuntary petition and consented to the entry of an order for relief. The remaining debtors in this case also filed voluntary chapter 11 petitions on November 1, 2001.[2]

---

1. The Bankruptcy Code, as amended, is set forth at 11 U.S.C. §§ 101–1330. Unless stated to the contrary, all future statutory references are to the Bankruptcy Code, e.g., "§ ___."

2. In addition to Quality Stores, Inc., the debtors include the following entities: QSI Holdings, Inc., Country General, Inc., F and C Holding, Inc., Farm and Country, LLC, QSI Newco, Inc., QSI Transportation, Inc., Quality Farm & Fleet, Inc., QSI Investments, Inc.,

On December 21, 2001, the debtors filed an Omnibus Motion for Orders (A) Authorizing the Debtors to Sell Certain Assets and Property to Certain Buyers Free and Clear of All (i) Liens, Claims and Encumbrances Pursuant to Sections 363(b) and 363(f) of the Bankruptcy Code and (ii) Transfer Taxes Pursuant to Section 1146 of the Bankruptcy Code and (B) Approving the Assumption and Assignment of Certain Unexpired Leases of Nonresidential Real Property in Connection with Such Sales (the "Omnibus Motion"). (Docket No. 496). The Omnibus Motion contemplated the sale of certain of debtors' stores through a process which involved soliciting initial bids, confirming that those bids were the "highest and best offers" by conducting auction sales, and finally, seeking court approval or disapproval of the auction results. (Docket No. 496). The Omnibus Motion also set forth detailed bidding procedures designed to govern the auction process. (Docket No. 496). The Retail Team, LLC, ("Retail Team") filed an objection to the Omnibus Motion on December 28, 2001. (Docket No. 524).

The auction sales were conducted on January 3, 2002, and a hearing to consider the Omnibus Motion and Retail Team's objection was held before this court on January 4, 2002.[3] At that hearing, Retail Team specifically objected to the debtors' proposed sale of twenty-six store locations to Orscheln Supply, LLC. ("Orscheln Supply") for $6,500,000.[4] Retail Team claimed that the debtors unfairly concluded the auction after Orscheln Supply's last bid. Had the auction continued, a representative of Retail Team credibly testified that it would have made a higher offer of $6,750,000 for the twenty-six stores that were subject of the auction sale.

B. *Approval of the Omnibus Motion and the Court's Reasoning.*

Upon conclusion of the January 4, 2002 hearing, this court granted the Omnibus Motion and entered five separate orders authorizing the debtors to sell various assets to the five proposed buyers.[5] The court also issued an extemporaneous oral bench decision, stating its specific findings of fact and conclusions of law that mandated approval of the sale of the twenty-six stores to Orscheln Supply.[6] *See* FED. R. BANKR. P. 7052. First, the court examined the bidding procedures set forth by the

---

Quality Stores Services, Inc., and Vision Transportation, Inc.

3. During the hearing on January 4, 2002, the court considered proposed sales to five prospective buyers. These five buyers included: Orscheln Supply, LLC, James E. Quinlan, JJ Linton Property Holdings, LLC, Fourth Generation Family Limited Partnership, and National Retail Equipment Liquidators.

4. Throughout these proceedings, Retail Team's sole objection has been to the sale of the debtors' assets to Orscheln Supply. The proposed sales to the other buyers are not at issue. On the record, at the hearing on the Motion for Reconsideration, all parties' attorneys agreed that only the Orscheln Sale Order is subject of the motion.

5. The orders entered on January 4, 2002, approve the debtors' proposed sales to: Orscheln Supply, LLC (Docket No. 562) (the "Orscheln Supply Sale Order"), James E. Quinlan (Docket No. 565), JJ Linton Property Holdings, LLC (Docket No. 566), Fourth Generation Family Limited Partnership (Docket No. 567), and National Retail Equipment Liquidators (Docket No. 568). Retail Team's Motion for Reconsideration applies only to the Orscheln Supply Sale Order.

6. Given the time constraints, the court was unable to prepare a written opinion regarding its decision. As is the instance in many bankruptcy cases, an *immediate* result was required. The undersigned judge acknowledges his opinion would have been much more cogent if written rather than orally stated.

debtors in the Omnibus Motion. The bidding procedures state in part that:

> [t]o be considered by the Debtors, a Qualified Competing Offer must (unless otherwise determined by the Debtors) ... give sufficient indicia that the bidder or its representative is legally empowered, by power of attorney or otherwise, and *financially capable*, to both bid on behalf of the bidder and also to complete and sign, on behalf of the bidder, a binding and enforceable asset purchase agreement ....

*See* Omnibus Motion at 8 (emphasis added). Although, by its explicit language, this provision only applies to Qualified Competing Offers (that is, an initial offer that would qualify a bidder to participate in the auction), the court ruled that this requirement could logically be extended to include subsequent bids.[7] The court determined that the burden of demonstrating financial wherewithal rested on the bidder. The court found that Retail Team did not show any written documentation to the debtors, either prior to or during the auction, to demonstrate their financial ability to close the proposed sale. Similarly, Retail Team failed to adequately demonstrate its financial wherewithal to close the proposed sale transaction by the January 15, 2002, closing deadline.[8]

Based on the facts presented on the record at the January 4 hearing, and noting the "wide business discretion" given to debtors selling assets under § 363, the court held that the financial uncertainties surrounding Retail Team's ability to close

the proposed sale justified the debtors' business decision to conclude the auction and accept Orscheln Supply's bid of $6,500,000. *Cf. In re Embrace Systems Corp.*, 178 B.R. 112, 124 (Bankr.W.D.Mich. 1995) (quoting *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir.1986) and explaining that, when a chapter 11 debtor seeks to sell substantially all of its assets under § 363(b)(1), the court will approve the sale "if a sound business purpose dictates such action"). The court determined that, while Retail Team may have been prepared to make the *highest* offer, the uncertainty of Retail Team's financial status—especially as compared to the financial certainty of Orscheln Supply's offer—justified the debtors' business judgment that Retail Team's bid was not the *best* offer.

The court further stated that "a sale of assets is appropriate if all provisions of § 363 are followed, the bid is fair, and the sale is in the best interests of the estate and its creditors." *Embrace Systems, Corp.*, 178 B.R. at 123. In this case, the court found that the auction sale complied with all provisions of § 363. Also, very importantly, the sale to Orscheln Supply had the full support of the Creditors' Committee and the Prepetition Lenders (the bank group which holds security interests in virtually all of the debtors' assets). The court recognized that the Creditors' Committee and the Prepetition Lenders were the parties who bore the risk if the sale was not timely closed. It was important that their interests be considered.[9] Defer-

---

7. During argument at the Motion to Reconsider, the Retail Team stated that its auction sale deposit in the amount of $460,000 entitled it to bid up to an amount of $9.2 million. Although not addressed by the court at the January 4, 2002 hearing, the Retail Team is correct in its assertion. However, that fact alone would not have changed the court's penultimate decision that the Debtor exer-

cised reasonable business judgment at the auction sale.

8. To the contrary, no question existed regarding Orscheln Supply's ability to pay the bid amount and timely close the sale.

9. *Cf. In re Flight Transp. Corp. Securities Litigation,* 730 F.2d 1128, 1135 (8th Cir.1984) (to

ring to the business judgment of the Debtor, the Committee and the Lenders, and in accordance with the testimony it heard at the January 4 hearing, the court found that the bid was fair and that the sale was in the best interests of the estate and its creditors. Finally, the court made an explicit finding, based upon preponderance of evidence, that the auction sale was conducted in good faith and showed no evidence of fraud or collusion. *See* § 363(m).

## C. *The Motion for Reconsideration.*

On January 7, 2002, three days after this court approved the sale to Orscheln Supply, Retail Team filed its Motion for Reconsideration of Order Granting Omnibus Motion for Orders (A) Authorizing the Debtors to Sell Certain Assets and Property to Certain Buyers Free and Clear of All (i) Liens, Claims and Encumbrances Pursuant to Sections 363(b) of the Bankruptcy Code and (ii) Transfer Taxes Pursuant to Section 1146 of the Bankruptcy Code and (B) Approving the Assumption and Assignment of Certain Unexpired Leases of Nonresidential Real Property in Connection with Such Sales ("Motion for Reconsideration"). (Docket No. 584). The Motion for Reconsideration requests that this court: 1) reconsider its Orscheln Supply Sale Order of January 4, 2002; 2) stay the Orscheln Supply Sale Order pending resolution of the Motion for Reconsideration; and 3) rescind its approval of Orscheln Supply's successful bid and order that a new auction be conducted. The Motion for

Reconsideration also discloses that, on January 8, 2002, Retail Team deposited $6,750,000 in an escrow account with the court.[10]

At the hearing on the Motion for Reconsideration, the Debtor, the Creditors' Committee, and the Retail Team, through their respective attorneys, orally requested an adjournment of the hearing. Orscheln Supply objected to the requested adjournment asserting prejudice. Neil Anderson, the Chief Financial Officer of Orscheln Supply, credibly testified and explained the prejudice to his company if the hearing was adjourned. Orscheln Supply is very actively moving toward the closing of the sale and has incurred numerous substantial expenses to timely accomplish closing.

The attorney for Retail Team argued that it would be prejudiced if no adjournment was granted because an uncertified transcript of the auction sale only recently became available for its review. A certified copy of the transcript was not yet available to be reviewed by this court.

The court, after considering the arguments and testimony, determined that the demonstrable prejudice to Orscheln Supply in adjourning the hearing would far outweigh the asserted prejudice to the Retail Team in not adjourning the hearing. The oral motion for an adjournment was therefore denied in the court's exercise of its reasonable discretion. *See* FED. R. BANKR. P. 1001 ("These rules shall be construed to secure the just, speedy and inex-

---

approve a settlement, the bankruptcy court should consider the business judgment of the trustee, including the probability of success in the litigation, the difficulties, if any, to be encountered in the matter of collection, the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it, and *the paramount interest of the creditors and a proper deference to their reasonable views in the premises* ) (citing *Protective Committee for Independent Stockholders of*

*TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968)); *See also In re Martin,* 91 F.3d 389, 393 (3rd Cir.1996) (same); *In re Justice Oaks II, Ltd.,* 898 F.2d 1544, 1549 (11th Cir.1990), *cert. denied,* 498 U.S. 959, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990) (same).

10. The Clerk of the Court has accepted the funds from the Retail Team and has deposited the funds pursuant to court order.

pensive determination of every case and proceeding.").

## IV.

### *DISCUSSION*

■ The Motion for Reconsideration requests relief under both Bankruptcy Rule 9023, which incorporates Rule 59 of the Federal Rules of Civil Procedure, and Bankruptcy Rule 9024, which incorporates Rule 60 of the Federal Rules of Civil Procedure. The determination of whether a motion for reconsideration is to be considered under Rule 59 or Rule 60 is generally dependent on when the motion was filed. *See Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 268 (6th Cir.1998); *Helm v. Resolution Trust Corp.*, 43 F.3d 1163 (7th Cir.1995) ("The time of a motion's ... [filing] controls whether a motion challenging a judgment is a 60(b) or 59(e) motion."). Motions seeking reconsideration under Rule 59 must "be filed no later than 10 days after entry of judgment." *Feathers*, 141 F.3d at 268. Conversely, "where a party's Rule 59 motion is not filed within the mandatory 10–day period, it is appropriate for a court to consider the motion as a motion ... for relief from judgment" under Rule 60. *Id.* (citing *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir.1991)). Since Retail Team's Motion for Reconsideration was filed three days after the entry of the Orscheln Supply Sale Order, this court will consider the motion under Rule 59.[11]

■ Motions for reconsideration under Rule 59 are properly regarded as either motions for a new trial, FED. R. CIV. P. 59(a), or motions to alter or amend judgment, FED. R. CIV. P. 59(e). *See Feathers*, 141 F.3d at 268. Retail Team's Motion for Reconsideration does not specify the subsection(s) of Rule 59 on which it relies. In effect, however, the Motion for Reconsideration seeks to present new evidence— that is, Retail Team's deposit of $6,750,000 in a court escrow account—to this court in an attempt to demonstrate its financial ability to close the proposed sale for a amount higher than that offered by Orscheln Supply. Thus, the court will construe the Motion for Reconsideration as a motion for a new trial based on newly discovered evidence.[12]

■ The decision to grant a new trial under Rule 59(a) rests within the sound discretion of the trial court. *See Davis v. Jellico Community Hosp.*, 912 F.2d 129 (6th Cir.1990); *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir.1989). Although the grounds for a new trial are

11. The decision to review this motion under Rule 59 instead of Rule 60 will not significantly impact the outcome of this case, however, since the standards governing these rules overlap to a great extent. *See In re Barker–Fowler Elec. Co.*, 141 B.R. 929, 935 (Bankr.W.D.Mich.1992).

12. Notably, the court would not alter or amend its judgment even if the Motion for Reconsideration were considered under Rule 59(e). The are three grounds on which a motion to alter or amend judgment under Rule 59(e) might be based: 1) an intervening change in the law; 2) the availability of new evidence; or 3) the need to correct a clear error of law or prevent manifest injustice.

*See In re No–Am Corp.*, 223 B.R. 512, 513 (Bankr.W.D.Mich.1998). In this case there has been no change in applicable law since the January 4, 2002, hearing. Although the evidence of Retail Team's deposit of $6,750,000 in escrow with the court is undoubtedly new, the existence of these funds on January 8 is immaterial in the court's evaluation of the debtors' business judgment as exercised on January 3. This "new" evidence would not cause the court to alter its decision. Finally, the court's judgment contains no clear legal error and will not cause manifest injustice. Thus, the court will not alter or amend its previous findings of fact and conclusions of law.

not specifically enumerated in the Rule, a new trial will generally only be granted if the verdict is against the weight of the evidence, the damages are excessive, there is newly discovered evidence, or the trial was otherwise unfair. 11 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 2805 (1973) (hereinafter WRIGHT & MILLER).

▇▇ In ruling on a motion for a new trial under Rule 59(a), the court considers the following five factors:

A motion for a new trial on the ground of newly discovered evidence [1] must show that the evidence was discovered since the trial; [2] must show facts from which the court may infer reasonable diligence on the part of the movant; [3] must show that the evidence is not merely cumulative or impeaching; [4] must show that it is material; and [5] must show that it is of such character that on a new trial such evidence will probably produce a different result.

*Marshall's U.S. Auto Supply, Inc. v. Cashman*, 111 F.2d 140, 142 (10th Cir.1940), cert. denied, 311 U.S. 667, 61 S.Ct. 26, 85 L.Ed. 428 (1940) (citation omitted) (numbering added). *See also* 11 WRIGHT & MILLER § 2808. Additionally, *the newly discovered evidence must pertain to facts that existed at the time of the trial.* 11 WRIGHT & MILLER at § 2808; *National Anti–Hunger Coalition v. Executive Comm.*, 711 F.2d 1071, 1075 (D.C.Cir.1983).

▇▇ In this contested matter, new evidence of Retail Team's financial wherewithal to close the proposed sale for at least $6,750,000 was created when Retail Team deposited such amount with this court on January 8, 2002. This new evidence became available after the court decided the Omnibus Motion and entered the Orscheln Supply Sale Order on January 4, 2002. However, evidence of the deposit was not in existence at the time of the hearing. Indeed, the deposit did not occur until four days *after* the hearing and entry of the Orscheln Supply Sale Order. Consequently, evidence of the deposit does not constitute new evidence that would necessitate a new trial.

With regard to the Retail Team's argument that the transcript of the auction sale should be considered by the court—in effect, the proofs should be reopened and a new trial take place—is rejected. The Retail Team had full opportunity to call witnesses to testify about what happened at the auction sale. The transcript of the sale is not "newly discovered evidence" and does not justify this court setting aside its prior order and permitting a new trial.[13]

Lastly, Retail Team argues that it was surprised by the results of both the auction sale and the court's ruling at the January 4, 2002 sale hearing. This is very probably true. However, this type of a surprise does not constitute sufficient grounds for the court to reopen proofs and grant a new trial.

The Motion to Reconsider fails to satisfy the remaining four factors as well. For instance, no amount of diligence on the part of Retail Team would have uncovered evidence of the deposit at the time of the hearing, because the deposit had not yet been made when the hearing occurred. Likewise, although a transcript was not available, all parties, including Retail Team, were entitled to present evidence regarding what occurred during the sale.

While evidence of the deposit would not have been cumulative or impeaching, neither would it have been material to the court's decision to approve the proposed

---

**13.** This conclusion is supported notwithstanding that the transcript may be arguably admissible into evidence as a party-admission. FED. R. EVID. 801(d)(2).

sale to Orscheln Supply. The analysis is the same regarding the inability to present a transcript of the sale.

At the hearing on January 4, the court evaluated whether the debtor's decision to conclude the sale auction after the $6,500,000 bid by Orscheln Supply was an appropriate exercise of its business judgment. Based on Retail Team's failure to provide the debtors with adequate written evidence of their financial wherewithal to close the sale either prior to or during the auction, the court made a factual finding that the debtors' decision to accept Orscheln Supply's bid was both reasonable and justifiable. Evidence that Retail Team possessed $6,750,000 on January 8, 2002, five days after the auction sale, is not material to the court's evaluation of the debtors' business judgment as exercised on January 3, 2002. Because the funds now deposited with this court is immaterial, it would not alter the court's decision.

As to the transcript of the auction sale, it is material. Indeed, the court would have appreciated the opportunity to review the transcript at the January 4 hearing. However, the findings of fact by the court made at the conclusion of the hearing were based upon the record presented, including the testimony of those persons who attended the auction sale. It is too late for Retail Team to present additional evidence of what occurred at the auction sale to challenge the Debtor's business judgment.

## V.

### *CONCLUSION*

The new evidence cited by Retail Team in support of its motion for a new trial was created after this court's entry of the Orscheln Supply Sale Order. The new evidence is immaterial to this court's assessment of the debtors' proper business judgment which was exercised during the auction sale on January 3, 2002. For the reasons stated above, this court denies Retail Team's Motion for Reconsideration. The court also denies Retail Team's request that the closing of the sale be stayed. An order shall be entered accordingly.